IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Billy L. Spears,**<br><br>    Plaintiff,<br><br>v.<br><br>**Steven McCraw, David Baker, Jack Webster, Michael Bradberry, Audra Livingston, Stephen P. Mach, Manny Flores, A. Cynthia "Cindy" Leon, Jason K. Pulliam, Randy Watson, Faith Johnson, Luis Gonzalez, Rhonda Fleming, Luis Sanchez, K.B. Wilkie, Brandon Negri, Jimmy Jackson, and Marcus Stokke,**<br><br>    Defendants | Case No. 1:17-cv-1105-RP |

## FIRST AMENDED COMPLAINT

NOW COMES Billy L. Spears, the Plaintiff herein, alleging and stating as follows:

### INTRODUCTION

1. The Plaintiff incorporates by reference his ORIGINAL PETITION in *Billy L. Spears v. Texas Department of Public Safety, et al.*, Case No. 1:15-cv-00511-RP (W.D. Tex.) (hereinafter *Spears I*), which is attached as Appendix 1. After *Spears I* was filed in this Court, some of the Defendants doubled down on their campaign of retaliation against the Plaintiff. High-ranking personnel in the Texas Department of Public Safety tampered with documents and forged signatures in an attempt to get the Plaintiff, a state trooper, terminated from the Department. Their plan eventually unraveled, but they caused the Plaintiff to transfer to a different job

- 1 -

assignment and he may be forced to retire early just to avoid further harassment. Meanwhile, the Upshur County District Attorney has investigated the forgeries and referred the case to the Texas Attorney General for further investigation and / or prosecution.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction under 28 U.S.C. § 1331 because the Plaintiff asserts federal claims under 42 U.S.C. § 1983.

3.   Venue is proper in this Court because some of the Defendants reside in Travis County, Texas and some of the relevant acts occurred in Travis County.  Furthermore, this case arises because the Defendants retaliated against the Plaintiff for filing *Spears I*, which was pending in this Court at all times relevant.

## PARTIES

4.   Plaintiff Billy L. Spears is a trooper with the Texas Highway Patrol, a division of the Texas Department of Public Safety (hereinafter "DPS").

5.   Defendant Steven McCraw is the director of DPS.

6.   Defendant David Baker is the deputy director of DPS.

7.   Defendant Jack Webster is the regional commander of DPS for Region 1.

8.   Defendant Michael Bradberry is a major in the Texas Highway Patrol.

9.   Defendant Audra Livingston is a captain in the Texas Highway Patrol.

10.   Defendant Stephen P. Mach is the chairman of the Texas Public Safety Commission, which oversees the DPS.

11.   Defendant Manny Flores is a member of the Texas Public Safety Commission.

12.   Defendant A. Cynthia "Cindy" Leon is a member of the Texas Public Safety Commission.

13. Defendant Jason K. Pulliam is a member of the Texas Public Safety Commission.

14. Defendant Randy Watson is a member of the Texas Public Safety Commission.

15. Defendant Faith Johnson is the Dallas County District Attorney. She served as a member of the Texas Public Safety Commision from May of 2014 until January 31, 2016.

16. Defendant Luis Gonzalez is the assistant director of DPS and the chief of the Texas Highway Patrol.

17. Defendant Rhonda Fleming is the inspector general of DPS.

18. Defendant Luis Sanchez is a captain in the Office of Inspector General of DPS.

19. Defendant K.B. Wilkie is a captain in the Texas Highway Patrol.

20. Defendant Brandon Negri is a lieutenant in the Office of Inspector General of the Texas Department of Public Safety.

21. Defendant Jimmy Jackson is a lieutenant in the Texas Highway Patrol.

22. Defendant Marcus Stokke is a sergeant with the Texas Alcoholic Beverage Commission.

**FACTS**

23. The Plaintiff filed *Spears I* on or about April 29, 2015.

24. On April 17, 2016, the Plaintiff aggravated an old knee injury while he was on duty in Pittsburg, Texas. He met with his primary care physician on April 26, 2016, and the following day his physician wrote a letter recommending that he be exempted from the DPS's semi-annual physical fitness test until he could be seen by a specialist.

25. The Plaintiff was originally scheduled to see an orthopedist on May 25, 2016, but a day or two before that date his orthopedist postponed the appointment until June 8, 2017. The Plaintiff informed his acting supervisor, Sgt. Willie Drabble, on May 23 or May 24 that he could

not see an orthopedist before the end of the testing period, and Sgt. Dribble advised the Plaintiff to write a memo to his captain, Defendant Audra Livingston.

26. The Plaintiff drafted a memo to Defendant Livingston and showed it to Sgt. Drabble, who read it and said, "That's right." Sgt. Drabble advised the Plaintiff to fill out a waiver form for the physical-fitness test, and the Plaintiff did so. Sgt. Drabble signed and dated the request, checked the box recommending approval, and then submitted both the waiver form and the memo to the Plaintiff's chain of command.

27. On May 26, 2016, while the Plaintiff was en route to a work assignment on the Mexican border, Corporal Sandy Taylor called the Plaintiff and told him that their lieutenant, Defendant Jimmy Jackson, said the Plaintiff would need a medical evaluation before he could continue working. The Plaintiff advised Cpl. Taylor to fax the form to his physician, and Cpl. Taylor faxed it on May 26, 2016. The Plaintiff's physician signed the form and returned it to Cpl. Taylor on May 27, 2016. On May 31, 2016, the Plaintiff was informed that he was unfit for duty and he was ordered to return to East Texas.

28. After returning to East Texas on June 1, 2016, the Plaintiff advised Cpl. Taylor by telephone that he would return to the local office the following day to complete paperwork. About an hour-and-a-half later, Cpl. Taylor called the Plaintiff and said Defendant Livingston had forbidden the Plaintiff from returning to the office, even to complete paperwork.

29. The Plaintiff had surgery on his knee on June 30, 2016, but because of complications he did not return to work until December 17, 2016. He was thus absent from the office from May 26, 2017 until December 17, 2016. Because of his ongoing recovery, the Plaintiff was unable to pass the physical-fitness test during the Fall of 2016 and Spring of 2017.

30. According to DPS policy, the Plaintiff should have been exempted from physical-

fitness testing while he was on medical leave and while he was recovering from surgery. Instead, the Defendants classified the Plaintiff as being non-compliant with DPS policy because he failed to take and pass physical fitness tests during that time.  As a result of the bad-faith misclassification, the Plaintiff ultimately was placed on a PIP on September 1, 2017 and warned that he was on the verge of being terminated.

31.   Prior to September 1, 2017, the Defendants never told the Plaintiff that they expected him to complete physical fitness tests while he was on medical leave and while he was recovering from knee surgery.  Similarly, the Defendants never told the Plaintiff that his request for a medical waiver in 2016 had been denied. Instead, they waited until after they put him on the PIP. As soon as the Plaintiff was informed that he was on a PIP, he asked his immediate supervisor, Sgt. Michael Sparks, to obtain copies of all documents indicating that his waiver request had been denied.

32.   On September 4, 2017, the Plaintiff took the physical-fitness test again and passed it with a high enough score to be rewarded with 12 hours of paid leave.

33.   On September 11, 2017, the Plaintiff was finally provided copies of the documents purporting to indicate why he had been denied a medical waiver, and those documents were forgeries. The memo that the Plaintiff wrote on May 23, 2016 or May 24, 2016, for example, had been altered and post-dated to June 2, 2016.  The date alteration was significant because it created the false appearance that the Plaintiff had not submitted his memo before the May 31, 2016 deadline, *i.e.*, it created the false appearance that the Plaintiff was not in compliance. The forgery is readily provable because the Plaintiff could not have written and signed the memo on June 2, 2016 – as of that date, he had been excluded from the office because he was on medical leave. Contemporary documents show that Cpl. Taylor had to sign the Plaintiff's time sheets

during that period because the Plaintiff could not report to the office. The altered memo also mentions a conversation between the Plaintiff and Cpl. Taylor that did not occur until after the Plaintiff's memo was written. Similarly, the altered memo referenced a medical test that had not occurred as of the date that the Plaintiff's memo was written.

34.  It appears that one or more Defendants electronically cut the Plaintiff's signature from another document and then pasted it onto the altered memo. As of this date, DPS personnel still cannot produce the original version of the document that is dated June 2, 2016.

35.  The Defendants also tampered with the waiver request form. The document was post-dated to June 1, 2016 (again, to make the Plaintiff's waiver request appear untimely), even though the Plaintiff was already on medical leave as of that date and even though other DPS records indicate that the waiver form was received on May 26, 2017.  Sgt. Dribble's handwritten signature was replaced with a stamped signature, and his handwritten date was replaced with a typewritten date of June 2, 2016, which was after the time that he and the Plaintiff were working together. Defendant Livingston dated her signature June 5, 2016, but the "5" was marked out and replaced with a "3."  That "3" is not similar to Defendant Livingston's handwriting, but it is identical to a "3" that is handwritten by Defendant Bradberry next to his signature. On information and belief, Defendant Bradberry was responsible for altering and forging the memo as well as the medical waiver request. Defendants Webster and Baker knew the waiver request form was a forgery, but they signed it anyway.

36.  Under normal circumstances, waiver requests are granted pro forma when signed by a physician. The Plaintiff's waiver request was denied, however, because the Defendants were retaliating against him for filing *Spears I*.  And the Defendants did not tell the Plaintiff about the denial of the waiver because they were setting him up for the PIP and ultimately for termination.

37.   Among the records obtained by the Plaintiff on September 11, 2017 was a note dated June 3, 2016 from Defendant Bradberry, a senior commander in the Garland office, recommending that Defendant Livingston deny the Plaintiff's request for a waiver. As explained above, those requests are normally granted pro forma when accompanied by a physician's recommendation. In his note, however, Defendant Bradberry faulted the Plaintiff because he did not pass the 2015 testing cycle with a higher score. To be clear, the Plaintiff passed the test in 2015, but Defendant Bradberry decided after the fact in 2016 that the Plaintiff should have had a higher score. On information and belief, Defendant Bradberry had never before blocked a medical waiver on that basis. Furthermore, the Plaintiff's knee injury was completely beyond his control, and a higher score in 2015 would have had no bearing on his knee injury. The Defendants were aware since 2008 that the Plaintiff had ongoing medical problems with his knee, and they refused to make a reasonable accommodation for the Plaintiff because they were retaliating.

38.   Even though Sgt. Dribble recommended approval of the Plaintiff's waiver request, everyone else in his chain of command did not, *i.e.*, Defendant Livingston, Defendant Bradberry, Defendant Webster, and Defendant Baker. Defendants Bradberry and Baker were named as defendants in *Spears I*, and all of the foregoing Defendants were retaliating against the Plaintiff for filing *Spears I* and otherwise exposing the cronyism and corruption within DPS.

39.   Defendants Webster, Baker, McCraw, Mach, Flores, Leon, Pulliam, Watson, and Johnson were aware of the DPS's history of retaliating against the Plaintiff, because the Plaintiff had previously sued DPS and some of the Defendants herein (including Defendant McCraw) in *Spears I* for retaliating against him. In fact, the filing of *Spears I* was reported by the Associated Press on April 29, 2015 and published in newspapers across Texas and the United States as well

as countries around the world. The Associated Press story noted that *Spears I* alleged the Plaintiff was retaliated against because (1) he filed a misconduct complaint against a law enforcement officer from another agency and (2) he allowed himself to be photographed with Calvin Broaddus (a.k.a. "Snoop Dogg") while working off-duty. Furthermore, the Plaintiff alleges on information and belief that Defendants McCraw, Mach, Flores, Leon, Pulliam and Johnson were briefed about *Spears I* by the Office of the Attorney General of Texas. Notwithstanding such notice, Defendants Webster, Baker, McCraw, Mach, Flores, Leon, Pulliam, Watson, and Johnson failed to supervise the other Defendants who kept retaliating against the Plaintiff.

40. Under Defendant McCraw, DPS developed an unwritten policy of retaliating against employees who dared to criticize retaliation or misconduct within DPS, particularly if the misconduct originated at the highest levels of DPS. Defendants Mach, Flores, Leon, Pulliam, Watson, and Johnson were aware of this unlawful policy and did nothing to reverse it.

41. As a result of the ongoing retaliation directed toward the Plaintiff, he reluctantly requested and received a transfer from the DPS Highway Patrol Service to DPS Commercial Vehicle Enforcement. The Plaintiff wanted to stay in his former position, and he would not have sought the transfer but for the pattern of retaliation and harassment.

42. Unless the Court enjoins the Defendants from further retaliation, the Plaintiff likely will be forced to retire early.

## CLAIMS

*42 U.S.C. § 1983*

43. All prior paragraphs are incorporated herein by reference. The Plaintiff alleges that the Defendants participated in a conspiracy to violate his civil rights.

44. The Plaintiff brings claims for damages and injunctive relief against all Defendants under 42 U.S.C. §1983 because they (1) retaliated against him for exercising his right to petition for redress of grievances as guaranteed by the First Amendment to the U.S. Constitution; (2) conspired with other Defendants who retaliated; or (3) failed to supervise those who retaliated.

45. Notwithstanding any other statement in this complaint, the Plaintiff brings claims for damages against the Defendants only in their individual capacities.  He seeks injunctive relief against the Defendants in their official capacities.

## REQUEST FOR RELIEF

46.  The Plaintiff respectfully prays that upon a final hearing of this case, judgment be entered for him against the Defendants, for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate; costs of court; attorney fees; and such other and further relief to which the Plaintiff may be entitled at law or in equity, including injunctive relief to prevent further retaliation.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Billy L. Spears**

## **CERTIFICATE OF SERVICE**

      I certify that I filed a copy of this document with the Court's electronic court filing system on April 16, 2018, which should result in automatic notification to all counsel of record.

      **/s/ Ty Clevenger**