# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| Billy L. Spears, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-1105 |
| | § | |
| Steven McCraw, David Baker, Jack Webster, | § | |
| Michael Bradberry, Audra Livingston, | § | |
| Stephen P. Mach, Manny Flores, | § | |
| A. Cynthia "Cindy" Leon, Jason K. Pulliam, | § | |
| Randy Watson, Faith Johnson, | § | |
| Luis Gonzalez, Rhonda Fleming, | § | |
| Luis Sanchez, K.B. Wilkie, Brandon Negri, | § | |
| Jimmy Jackson, Marcus Stokke, | § | |
| Willie Drabble, and Michael Sparks. | § | |
|     Defendants. | § | |

---

### Defendants Drabble and Sparks' Motion to Dismiss
### Plaintiff's Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6)

---

Defendants Willie Drabble and Michael Sparks ("Defendants")[1] submit this motion to dismiss the claims asserted against them in Plaintiff Billy Spears's Second Amended Complaint. ECF No. 25. In support of this motion, Defendants offer the following:

### I.
### Objection

Spears's incorporation by reference of two separate complaints is improper. Rule 10(c) states that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Fifth Circuit has acknowledged that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings

---

[1] Defendants Steven McCraw, David Baker, Jack Webster, Michael Bradberry, Audra Livingston, Luis Gonzalez, Rhonda Fleming, Luis Sanchez, K.B. Wilkie, Brandon Negri, Jimmy Jackson, and Marcus Stokke filed a motion to dismiss. ECF No. 28. Defendants Stephen Mach, Manny Flores, A. Cynthia "Cindy" Leon, Jason Pulliam, Randy Watson and Faith Johnson, who are former and/or current members of the Texas Public Safety Commission, are represented by separate counsel.

if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, while Rule 10(c) "permits references to pleadings and exhibits in the same case, . . . there is no rule permitting the adoption of a cross-claim in a *separate action in a different court* by mere reference." *Muttathottil v. Mansfield*, 381 F. App'x 454, 456-57 (5th Cir. 2010) (citing *Tex. Water Supply Corp. v. Reconstr. Fin. Corp.,* 204 F.2d 190, 196 (5th Cir. 1953) (emphasis added)); *see also Kerr v. Exobox Techs. Corp.,* No. H-10-4221, 2012 U.S. Dist. LEXIS 7523, at *29 (S.D. Tex. Jan. 23, 2012) (noting that the Fifth Circuit has been reluctant to allow an incorporation by reference to another case and finding that although the defendants were on notice of the factual claims because they were in the same court with many of the same defendants, the plaintiff nevertheless had to replead the allegation in order to state a claim).

Here, Spears states that he "incorporated by reference" his complaint from *Billy L. Spears v. Texas Department of Public Safety, et al.*, Case No. 1:15-cv-00511-RP (W.D. Tex.) and the complaint from *Darren Lubbe v. Mark Milanovich, et al.*, Case No. 1:18-cv-01011 (W.D. Tex.). ECF No. 32 at 2. Plaintiff states that "[w]hen the allegations from the *Spears I* complaint and *Lubbe* Complaint are combined with the SAC [Second Amended Complaint], it is clear that each of the named Defendants personally participated in the retaliation campaign against Plaintiff." *Id.* Rule 8(a) contains a plain and definite requirement that "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a); *Muttathottil*, 381 F. App'x at 457 (citing *Shelter Mutual Insurance Co. v. Public Water Supply District No. 7*, 747 F.2d 1195, 1198 (8th Cir. 1984) (disapproving of a party's attempt to incorporate by reference a "lengthy" document incorporating "thirty-six pages of allegations" and noting that "[a] pleading incorporating allegations from other documents must clarify which statements are to be incorporated")). In other words, mere reference to two other separate complaints in which Spears's additional claims are purportedly

described is insufficient to meet Rule 8's pleading requirements. *Id.* The Fifth Circuit in *Muttathottil* affirmed that while the defendant may be have been on notice regarding claims that Muttathottil sought to incorporate, Muttathottil did not plead those claims within the four corners of his compaint, and the district court did not err in declining to address those claims in its summary judgment decision. *Id.* at 457.

Just as in *Shelter*, Spears attempts to incorporate by reference some 34 pages of allegations contained in separate complaints, without clarfying what facts or allegations he intends to reference or incorporate. The allegations in *Spears I* have already been dismissed, and by "incorporating" the *Spears I* complaint into his Second Amended Complaint, Spears is effectively re-litigating the claims that should be barred by collateral estoppel and res judicata. In *Spears I*, Spears attempted to consolidate his *Spears I* complaint with the present case after a motion for summary judgment was already filed. This Court had already granted summary judgment with respect to the First Amendment claims against Baker, Bradberry, Sanchez, and Fleming. *See Spears I*, Case No. 1:15-cv-00511-RP, ECF No. 51. This Court also granted summary judgment on all federal claims against all defendants based on qualified immunity. *Id.* After summary judgment was ruled on, the only claim left in *Spears I* was the claims brought pursuant to the Texas Whistleblower Act. *Id.* This Court then denied Spears's motion to consolidate, finding "(1) the alleged retaliation in *Spears II* took a different form than the alleged retaliation in *Spears I*; and (2) Defendants are likely to raise defenses in *Spears II* that are irrelevant to the claims in *Spears I*." *See Spears I*, ECF No. 52. After the defendants' motion for summary judgment was granted as to all First, Fourth, and Fourteenth Amendment claims, and after the Plaintiff's motion to consolidate was denied, a Stipulation of Dismissal was filed. *See Spears I*, ECF No. 55. In an attempt to circumvent the doctrines of collateral estoppel and res judicata, Plaintiff now attaches his *Spears I* complaint to his *Spears II* complaint, with all allegations previously dismissed based on the merits included. Throughout his *Spears II* complaint, Plaintiff incorporates those same factual

allegations, which were already dismissed as a matter of law with prejudice at the MSJ stage of the *Spears I* litigation, in an attempt to state a claim in *Spears II*.[2] It is unclear why the Lubbe complaint is attached, as it is a completely different plaintiff and different claims. Defendants object to the improper incorporation of the *Spears I* and *Lubbe* complaint.

## II.
## Statement of the Case

On April 17, 2016, Plaintiff Billy Spears ("Spears"), a senior trooper with the Texas Department of Public Safety ("DPS"), filed suit against eleven defendants: (1) Texas Department of Public Safety; (2) DPS Director Steven McCraw; (3) DPS Assistant Director David Baker; (4) DPS Highway Patrol Division (DPS HPD) Chief Luis Gonzalez; (5) DPS Inspector General Rhonda Fleming; (6) DPS HPD Major Michael Bradberry; (7) DPS Office of Inspector General ("DPS OIG") Captain Luis Sanchez;[3] (8) DPS HPD Captain K.B. Wilkie; (9) DPS OIG Lieutenant Brandon Negri; (10) DPS HPD Lieutenant Jimmy Jackson; and (11) Texas Alcoholic Beverage Commission ("TABC") Sergeant Marcus Stokke. *See Billy L. Spears v. Texas Department of Public Safety, et al.*, Case No. 1:15-cv-00511-RP (W.D. Tex.) ("*Spears I*").

In *Spears I*, Spears alleged many of the DPS Defendants retaliated against him for filing grievances against TABC Sgt. Stokke in violation of the First Amendment; and he contends the DPS Defendants violated the Fourteenth Amendment by denying him due process and equal protection. *Id.* He also argued Sgt. Stokke violated his Fourth Amendment right to be free from unreasonable seizures. *Id.* The facts underlying *Spears I* relate to an interaction between Spears and TABC Sgt. Stokke on May 10, 2014 at the Bass Masters Classic concert in Lake Fork, Texas. *Id.* Stokke detained Spears,

---

[2] To the extent that Spears is attempting to effectively "re-plead" his Spears I allegations, those allegations and claims are barred by the statute of limitations. Under Texas law the statute of limitations for a civil conspiracy begins to run after "the last overt act alleged to have caused damage." *Harang v. Aetna Life Insurance Company*, 400 S.W.2d 810, 814 (Tex. Civ. App. 1966). As this Court has already concluded in *Spears I*, the claims in *Spears I* do not amount to a constitutional violation and the retaliation claims are two separate retaliation claims, which is central to why the Court did not consolidate *Spears I* and *Spears II*.

[3] Spears dismisses Luis Sanchez from the suit. ECF No. 25 at 12.

who was trying to take an alchoholic beverage from a private area, which was licensed and designated for such beverages, into a public area. *Id.* Spears contends that his report of Stokke's actions that evening caused him to receive disciplinary actions. *Id.* The disciplinary actions he argues he received as a result of his complaint about Stokke's actions were coaching sessions—one related to his conduct with Stokke on May 10, 2014 and the other related to a photograph he agreed to take with Calvin Broaddus ("Snoop Dogg") in March 2015.

While Defendants' dispositive motion in *Spears I* was pending, Spears filed a second lawsuit in this Court on November 21, 2017 ("*Spears II*"). *See* ECF No. 1. In response to Defendants' motions to dismiss, Spears filed a First Amended Complaint on April 16, 2018. ECF No. 12. Defendants again filed motions to dismiss, which were granted by this Court. ECF No. 22. The Court gave Spears a second chance to amend his complaint . *Id.* In his second amended complaint, Spears sues twenty (20) defendants. ECF No. 25. Ten of the twenty Defendants are also named defendants in *Spears I*—DPS Director Steven McCraw, DPS Deputy Director David Baker, DPS Major Michael Bradberry, retired DPS Captain Audra Livingston, DPS Assistant Director Luis Gonzalez, DPS Inspector General Rhonda Fleming, DPS Captain K.B. Wilkie, DPS Lieutenant Jimmy Jackson, and former TABC Sergeant Marcus Stokke. ECF No. 25 at 19.

The events complained about in the present suit (*Spears II*) begin on April 17, 2016, which is the date Spears allegedly aggravated an existing knee injury while on-duty. *Id.* at 5. Spears's primary care physician wrote a letter recommending that he be exempted from DPS's semi-annual physical fitness test until his could be seen by a specialist. *Id.* Spears claims he informed his acting supervisor, Defendant Willie Drabble, on May 23 or 24 that he was unable to see a specialist before the end of the testing period. *Id.* Defendant Drabble advised Spears to write a memo to his captain, Defendant Audra Livingston, and fill out a waiver form for the physical fitness test. *Id.* Defendant Drabble then submitted both the waiver and the memo up the chain of command. *Id.*

Spears claims he was on paid medical leave from May 26, 2016 until December 16, 2016. *Id.* at 6. According to the facts alleged in the complaint, Spears was unable to take the mandatory DPS physical fitness tests in Fall 2016 and Spring 2017. *Id.* Spears claims Defendants deliberately misclassified him as being non-compliant with DPS policy for failing to take the physical fitness tests. *Id.* He further claims that he was not informed his medical waiver was denied, which would have excused him from performing the mandatory physcial fitness tests based upon his medical needs. *Id.* This denial, which is alleged to have occurred at the end of May 2016, is the reason Spears contends he was improperly placed on a Performance Improvement Plan (PIP) in September 2017 and warned about possible termination. *Id.* According to Spears, the Defendants did not inform him that his request for medical waiver had been denied and put him on the PIP in an attempt to get him fired as retaliation for filing *Spears I. Id.* at 6–7.

Spears further alleges that the copies of the documents indicating that his waiver request was denied were forgeries. *Id.* at 7. Specifically, Spears alleges that his memo was post-dated to reflect a date outside of the deadline for him to submit the memo, and that the memo included events that did not occur until after Spears wrote the memo. *Id.* at 7–8. According to Spears, the waiver request form had been tampered with because it was post-dated. *Id.* at 8.

Ultimately, Spears alleges that the Defendants withheld notice that his waiver was denied because they were setting him up for discipline and ultimate termination as retaliation for *Spears I. Id.* at 9. Accordingly, the Defendants denied him due process by denying him notice of their adverse decision. *Id.* Spears also alleges that the Defedants violated his equal protection rights by trying to cover up the forgery, and that their attempts to cover up the forgery are strong evidence of a conspiracy. *Id.* at 15. Lastly, Spears claims that the supervisory Defendants failed to supervise the other Defendants, thus participating in a conspiracy to violate his civil rights. *Id.* at 16–17. Spears seeks an

unspecified amount of damages, prejudgment and post-judgment interest, costs, and attorney's fees against the Defendants only in their individual capacities. *Id.* at 17.

## III.
## Brief in Support of Motion to Dismiss

### A.  The Court Should Dismiss Spears's § 1983 Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6) Because He Fails to State a Valid Constitutional Claim.

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

### 1.  Spears's Allegations Fail to Overcome Defendants' Qualified Immunity.

A state official is entitled to a presumption of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Qualified immunity is an "immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d

209, 211 (5th Cir. 2010). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

In assessing a qualified immunity defense, a court must conduct a two-part analysis: A court must consider whether the alleged facts state a constitutional violation. Then, even if the alleged facts do state a claim for a constitutional violation, the official is entitled to qualified immunity unless the plaintiff can show the unconstitutional conduct violated clearly established law at the time of the conduct. *Pearson*, 555 U.S. at 232. The two-part analysis need not be taken in a particular order. *Id.* at 236 (overruling the mandatory sequence of the qualified immunity analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001)). Finally, "[i]f the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

> a. **Spears fails to allege facts that constitute a constitutional violation because he fails to allege the requisite personal involvement of defendants in any of the alleged constitutional violations.**

In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). A civil rights plaintiff cannot simply make generalized allegations or assert legal or constitutional conclusions to satisfy these requirements. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). "[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Id.*; *see also Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990) ("A section 1983 complaint must state specific facts, not simply legal and constitutional conclusions."), *cert. denied*, 498

U.S. 908 (1990). These facts must create an affirmative link between the claimed injury and the defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Here, Spears fails to make any more than generalized and conclusory allegations to create an affirmative link between the Defendants and his alleged injury.[4]

### 1. DPS HPD Sergeant Willie Drabble

In his complaint, Spears's allegations against Sgt. Drabble amount to nothing but conclusory allegations. Specifically, Spears claims that he informed Defendant Drabble, his acting supervisor, on May 23 or 24, that he could not see an orthopedist before the end of the testing period for the physical fitness test. ECF No. 25 at 5. Sgt. Drabble advised Spears to write a memo to his captain, Audra Livingston. Id. Spears showed the memo to Sgt. Drabble, who then advised Spears to fill out a waiver form for the physical fitness test, which Spears did. Id. Sgt. Drabble signed a dated the request, checked the box recommending approval, and submitted the waiver and memo up the chain of command. Id. Spears admits that Sgt. Drabble recommended approval of his waiver request. Id. at 11.

Spears alleges that the medical request signed by Sgt. Drabble was forged by another defendant because it was dated later than the original form. Id. at 14–15. Spears alleges that Sgt. Drabble lied to two investigators about the date and signature on the waiver at the direction of other defendants. Id. at 15. Spears never states how this allegation, even if true, violated his constitutional rights. Spears only makes the conclusory allegation that his equal protection rights were violated when the Defendants tried to cover up the forgery, and their "after-the-fact attempts" to cover up the forgery are strong evidence of a conspiracy. *Id.* There are no facts explaining how Sgt. Drabble violated his equal protection rights. Taking Spears's allegations against Sgt. Drabble as true, there is no

---

[4] As far as the complaint is concerned, the only injury suffered by Spears was that he was placed on a performance improvement plan ("PIP"), which *could* weigh against a promotion or advancement; Spears merely alleges that he was transferred to a different job assignment; he does not allege how the PIP from 2016 has affected his career in any way, or that he's suffered any physical or emotional injury because of the PIP.

constitutional violation, as explained below.

## 2. DPS HPD Sergeant Michael Sparks

Spears mentions Sgt. Sparks, his "former" immediate supervisor, only twice in his complaint: once to state that the PIP was "signed and served" on him by Sgt. Sparks at the direction of another Defendant, and again when he states he asked Sgt. Sparks "to obtain copies of all documents indicating that his waiver request had been denied." ECF No. 25 at 6, 7. Spears fails to allege facts that demonstrate a causal connection between (1) the fact that Sparks handed him the PIP and that he asked Sparks for the relevant paperwork[5] and (2) any protected activity or anything else related to his retaliation. Nor does Spears allege facts that demonstrate Sparks or any Defendant's connection with being placed on a performace improvement plan (PIP) except to say that the PIP was "signed and served on Plaintiff by Defendant Sparks at the direction of Defendant Bradberry." *Id.* Simply handing Spears the PIP form and then providing him with the relevant documents that Spears requested does not create a causal connection to a constitutional violation. Further, Spears cannot simply state "Defendants classified the Plaintiff as being non-compliant with (an unspecified) DPS policy" or "Defendants never told Plaintiff that his request for a medical waiver in 2016 had been denied." *E.g., id.* at 6,7. Such statements fail to demonstrate each (or, indeed, any) Defendant's participation in the alleged constitutional violations and are insufficient to support § 1983 claims.

---

[5] There is no allegation that Sparks had any personal involvement in the PIP besides handing him the paperwork, nor is there any allegation that Sparks refused to give him the relevant documents about the waiver.

**b. Spears does not demonstrate Defendants[6] retaliated against him in violation of the First Amendment because he fails to allege facts that he suffered an adverse employment action.**

To state a claim for employment retaliation related to speech under § 1983, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action. *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 420–21 (5th Cir. 2017), citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016). Here, Spears contends that Defendants "retaliated against him for exercising his right to petition for redress of grievances as guaranteed by the First Amendment," or conspired with, or supervised, those who retaliated. ECF No. 25 at 16–17. As a matter of law, Spears does not state a claim for First Amendment retaliation because he fails to demonstrate at least two of the four essential elements. Assuming arguendo that Spears's "speech" does involve a matter of public concern,[7] Spears fails to show that he suffered an adverse employment action, and that the "speech" precipitated the adverse employment action.

If a plaintiff cannot allege facts that, if true, would directly establish that the defendant possessed a retaliatory motive, causation may be shown by either a close temporal proximity between the protected activity and the adverse employment action or "a chronology of events from which retaliation may plausibly be inferred." *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013). Additionally, liability under § 1983 is limited to individuals who were personally involved in violating a plaintiff's constitutional rights. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381

---

[6] It is unclear whether Spears includes Defendants Sparks and Drabble in his vague allegations against "Defendant supervisors." ECF No. 25 at 9. Defendants will address this argument out of an abundance of caution.

[7] This Court previously rejected Defendants' argument that Spears's speech does not involve a matter of public concern. ECF No. 22 at 10, n. 5. For purposes of preservation, Defendants reassert that Spears's speech does not rise to the level of public concern, but only public interest. "Of course in one sense the public may always be interested in how government officers are performing their duties"—and the public's interest would presumably increase when Snoop Dogg is purportedly involved—but "that will not always suffice to show a matter of public concern." *See Borough of Duryea, Pa.*, 574 U.S. at 399; *See also* ECF No. 15 at 11–12.

(5th Cir. 2005). As explained, Spears fails to sufficiently allege the personal involvement of any of the Defendants in the alleged retaliatory act.

Based on Spears's complaint, there are three acts that could potentially support an adverse employment action: the denial of his medical waiver, placing Spears on a PIP, and/or Spears's voluntary transfer. Spears alleges that the Defendants "caused the Plaintiff to transfer to a different job assignment and he now has a disciplinary record as a result of the forged documents." ECF No. 25 at 1–2. Spears did not include information regarding this transfer anywhere in his Second Amended Complaint except for the introduction. Finally, Spears has not alleged any facts to indicate that his voluntary transfer was a demotion—proving "objectively worse" than his previous position—rather than a lateral transfer. *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

Spears's complaint largely focuses on the denial of the medical waiver. Spears has not alleged how the denial of the medical waiver resulted in any adverse action by any Defendant. Spears specifically targets Bradberry for tampering with his memo and waiver request form to make it appear to be filed untimely and on Drabble for "lying" about it. *Id.* at 7–8, 15. However, Spears does not set forth facts that this alleged "forgery" of dates had anything to do with the denial of his medical waiver or his placement on PIP.

Further, Spears has not alleged sufficient facts to show either an adverse employment action or that his protected speech was a "motivating factor" in the public employer's decision to discipline the employee. *Crampton v. Weizenbaum*, No. 17-51126, 2018 WL 6822319, at *9 (5th Cir. Dec. 27, 2018) (per curiam) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977)). Spears seeks to support the inference that *Spears I* was the motivating factor behind the denial of the medical waiver and PIP by simply stating there is no other explanation. *See* ECF No. 25 at 9–10 ("There is only one explanation for these events: the Defendants withheld notice because they were setting up the Plaintiff for discipline and untimately for termination. The only reasons for denying the

waiver….were the events underlying *Spears I*, the filing of *Spears I*, and the media attention…[t]here is no other explanation."); *See also* ECF No. 25 at 10–11 ("…they were retaliating for the events outlined in *Spears I*, the filing of *Spears I*, and the resultant negative media attention. There was no other reason for the Defendant to fabricate a different standard…").[8]

The Fifth Circuit has noted that "[m]any actions which merely have a chilling effect on protected speech are not actionable. Actions such as 'decisions concerning teaching assignment, pay increases, administrative matters, and departmental procedures' while extremely important . . . do not rise to the level of a constitutional deprivation." *Harrington v. Harris*, 118 F.3d 359, 365 & n.6 (5th Cir. 1997) (citing *Dorsett v. Bd. of Trustees for State Colls. & Univ.*, 940 F.2d 121, 123–24 (5th Cir. 1991)). Spears does not allege who placed him on a PIP, nor has he pleaded any facts beyond conclusory allegations to support an inference that *Spears I* was a motivating factor for the denial of his medical waiver and subsequent PIP.

### c. Spears fails to state a conspiracy claim because he has not alleged facts to suggest an agreement among the defendants to commit an illegal act.

Spears alleges that Defendants engaged in a conspiracy to violate his civil rights, stating that after *Spears I* was filed, some of the Defendant "doubled down on their campaign of retaliation against the Plaintiff." ECF No. 25 at 1. Specifically, Spears alleges that "the denial of his medical waiver and the resulting PIP were a continuation of the conspiracy that began in *Spears I*, namely a conspiracy to retaliate against the Plaintiff for exercising his constitutional rights." *Id.* at 11. Spears further states that the Defendants' "after-the-fact attempts to cover up the forgery are strong evidence of a conspiracy."[9] *Id.* at 15.

Conspiracy is a derivative cause of action—that is, "[s]ection 1983 does not provide an independent cause of action for conspiracy." *E.G. v. Bond*, 1:16-CV-068-C, 2017 WL 129019, at *4

---

[8] Defendants Drabble and Sparks were not named defendants in *Spears I*.
[9] To the extent Spears is alleging criminal conspiracy, he lacks standing to bring that claim.

(N.D. Tex. Jan. 13, 2017). "Instead, a § 1983 conspiracy claim serves as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act." *Id.* (citations omitted). To plead a valid conspiracy claim under § 1983, a plaintiff must allege facts that suggest: (1) an agreement between parties to commit an illegal act, and (2) an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). "[A] conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)).

Further, mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under 42 U.S.C. § 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (en banc). Specific facts must be pleaded when a conspiracy is alleged; mere conclusory allegations will not suffice. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). Plaintiff must allege the operative facts of the alleged conspiracy. *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). The Fifth Circuit has noted that "charges as to conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or interference, as here, trifles light as air," will suffice to sustain a claim of conspiracy. *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Spears fails to state a conspiracy claim. First, he has not alleged facts in the complaint to suggest an agreement among the defendants to commit an illegal act. Spears provides nothing to substantiate his claim of conspiracy other than the bare and conclusory assertion that one existed. Second, as already stated, Spears has not sufficiently alleged facts to show a violation of his constitutional rights.

Additionally, all but one of the named Defendants are from a single entity—DPS. As such, a conspiracy claim against them is barred by the intra-corporate conspiracy doctrine. *Reynosa v. Wood*, 134 F.3d 369, *2 [published in full-text format at 1997 U.S. App. LEXIS 41715] (5th Cir. 1997) ("where all of the defendants are members of the same collective entity, the conspiracy does not

involve two or more people"); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). In this case, all but one of the Defendants accused of conspiracy are employees of DPS. Thus, they constitute a single entity, which is incapable of conspiring with itself. *See Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997) (applying doctrine to § 1983 conspiracy claim involving police department and police officers). Even when the defendants are sued in their individual capacities, as the Defendants in this case, the premise is still true. *Collins v. Bauer*, 2012 U.S. Dist. LEXIS 17769, 2012 WL 443010, *8 (N.D. Tex. 2012). Accordingly, his conspiracy claims should be dismissed.

> **d. Spears fails to set forth facts sufficient to state a claim of Due Process because he did not allege the existence of a property interest.**

Spears alleges that the Defendants denied him due process by denying him notice of their adverse decision—denial of the medical waiver. ECF No. 25 at 9. The Due Process Clause of the Fourteenth Amendment includes a procedural component and a substantive component. *Montgomery v. Mississippi*, 498 F. Supp. 2d 892, 910 (S.D. Miss. 2007) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Plaintiff failed to specify which due process component he pursues. Procedural due process protects against "the deprivation by state action of a constitutionally protected interest in 'life, liberty or property'. . . without due process of law." *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Substantive due process "bars certain arbitrary, wrongful government actions" resulting in the deprivation of a constitutional right or interest—"regardless of the fairness of the procedures used to implement" the government actions. *Zinermon*, 494 U.S. 113, 125 (quoting *Daniels*, 474 U.S. at 331).

Significantly, both substantive and procedural due process claims require proof that the plaintiff suffered deprivation of interests "encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) (regarding procedural due process); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 (1985) (regarding substantive due process). Thus, Plaintiff's due process claims fail without the existence of a property interest. Whether a property interest exists is determined under state law. *Johnson v. Sw. Miss. Reg'l Med.*

*Ctr.*, 878 F.2d 856, 858 (5th Cir.1989). Under Texas Law, at-will employees, such as Spears, have no property interest in continued employment. *Bishop v. Wood*, 426 U.S. 341, 345 n. 8 (1976). As such, Spears's Due Process claim must be dismissed.

Furthermore, Spears cannot recover against the Defendants individually because they were not his employer. In *Harris v. City of Balch Springs*, the court held that "a [procedural due process] claim lies against the government employer, not an employee or official of the government." 9 F. Supp.3d 690, 700 (N.D. Tex. 2014) (Lindsay, J.). The plaintiff worked for the City of Balch Springs and the City terminated her employment without an opportunity for a name-clearing hearing. *Id.* at 698–99. The plaintiff sued the individual council members who rejected her request for a hearing, contending that they violated her right to procedural due process. *Id.* But this Court held that "as a matter of law, [the individual capacity defendants] cannot be liable to Plaintiff" for violating her right to due process. *Id.* at 700. Last year, the Fifth Circuit agreed with this Court's conclusion, holding that "[a] deprivation of a liberty claim lies against the government employer, not a government employee or official." *Sims v. City of Madisonville*, 894 F.3d 632, 642–43 (5th Cir. 2018) (citing *City of Balch Springs*, 9 F. Supp. 3d at 700). The Fifth Circuit held that the individual employee was entitled to qualified immunity from the procedural due process claim. *Id.* at 643. For the same reason, the court recently held that government officials "cannot be held individually liable . . . for violating . . . Fourteenth Amendment rights." *Wilson v. Davis*, No. 3:15-CV-3588-D, 2016 WL 4720480, at *3 (N.D. Tex. 2016) (Fitzwater, Senior J.). Because none of the Defendants are Spears' employer as a matter of law, they fail to state a procedural due process claim against him.

Even assuming arguendo that Spears did have a liberty interest in a hearing for termination that never occurred, the Defendants in their individual capacity are entitled to qualified immunity from Spears's liberty-interest due process claim. "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process." *Bledsoe v. City of Horn Lake,*

*Miss.*, 449 F.3d 650, 653 (5th Cir. 2006). "Rather, a liberty interest is infringed . . . only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Id.* "[T]o determine whether § 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name," "[t]he plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request." *Id.* Here, Spears's factual allegations do not create the reasonable inference that any of the Defendants violated a clearly-established constitutional or statutory right to due process based on a liberty interest. Further, Spears's procedural due process claim suffers the same fatal defect as his liberty-interest due process claim: Spears is still employed by DPS. Spears does not overcome the Defendants' qualified immunity because the alleged facts neither create the reasonable inference that the Defendants interfered with a clearly-established property interest, nor that the procedures were constitutionally deficient.

> **e. Spears's Equal Protection claim must fail because the alleged facts in his complaint do not meet the elements necessary to show a constitutional violation.**

Spears alleges that "[t]he Defendants violated the Plaintiff's equal protection rights by trying to cover up the forgery." ECF No. 25 at 15. Spears cites to *Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983). In *Ryland*, the Rylands alleged that a local prosecutor murdered their daughter, and the assistant District Attorney and the District Attorney, while acting under color of state law, prevented a full investigation into the cause of the death. *Id.* at 969. The District Attorneys cancelled the autopsy and persuaded the coroner to list the cause of death as suicide. *Id.* The defendants also stymied a police investigation into the circumstances surrounding the death by representing to the police that the death was a suicide. *Id.* The alleged murder cover-up was exposed by the Attorney General of Louisiana,

who obtained a conviction of the local prosecutor for the murder. *Id.* The Rylands claimed by concealing the murder for a period of eleven months, the defendants prevented them from discovering that their daughter had been murdered. *Id.* at 969–70. The Rylands brought a wrongful death suit against the prosecutor under the Louisiana Civil Code, claiming that the defendants deprived them of their civil rights by wrongfully interfering with their access to the state courts to pursue their tort claim against the prosecutor. The district court granted the defendants' motion to dismiss, holding that the Rylands lacked standing to bring this suit, and that the defendants were protected by prosecutorial immunity. *Id.* The Fifth Circuit reversed and remanded, finding that a jury could conclude that the alleged conspiracy to obstruct justice and/or deny the plaintiffs their constitutional rights was actually carried out. *Id.*

However, the *Ryland* case is distinguishable from the present case. In *Ryland*, there was a conviction and evidence that the murder was covered up. *Ryland*, 708 F.2d at 969. The Fifth Circuit explained that there could be a first amendment violation through the right of access to courts, the right to petition, and due process. Id. at 971–72. On remand, the Fifth Circuit named the prevailing issue to be addressed: "[T]he court should first address the issue of whether the actions of the defendants amounted to interference with the Rylands' right of access to the courts." *Id.* at 973.

Spears specifically cites to Ryland, 708 F.2d at 974, which states:

> An analysis of the extent of a constitutional deprivation is not an exact science capable of quantification; rather, it is qualitative in nature. *Thompson v. Washington*, 162 U.S. App. D.C. 39, 497 F.2d 626, 636 (D.C.Cir.1973). However, we have previously held that "if state officers conspire . . . in such a way as to defeat or prejudice a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law." *Dinwiddie v. Brown*, 230 F.2d 465, 469 (5th Cir.), *cert. denied*, 351 U.S. 971, 76 S. Ct. 1041, 100 L. Ed. 1490 (1956). Conduct by state officers which results in delay in the prosecution of an action in state court may cause such prejudice. *Id.*

Here, Spears is not bringing a wrongful death suit against the state officials for murder and

subsequent cover-up of the murder where there has already been a conviction. Nor is Spears bringing an access to courts claim or claiming that the Defendants in some way prevented or delayed him from bringing a civil claim in a state court such that it would amount to a constitutional violation. Spears is only alleging bare-bones facts about a "forgery" of the date of an internal memo and medical waiver. Even taken as true, the conclusory allegations presented by Spears do not amount to the denial of Equal Protection.

Further, to the extent that Spears is alleging an Equal Protection violation under the disparate treatment theory, his claims must fail. Under the Equal Protection Clause, a law or rule is evaluated for disparate treatment or impact on a particular class of persons. *See Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 601 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others'") (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961); and also citing *Ross v. Moffitt*, 417 U.S. 600, 609 (1974) ("'Equal Protection . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable."); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes")). "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" *Engquist*, 553 U.S. 591, 602.

Spears claims that he is the only DPS employee who has ever been denied a medical waiver and required to take a physical fitness test in order to return from medical leave. *See* ECF No. 25 at 8–9. His claim thus asserts a "class-of-one" theory of equal protection. The Equal Protection Clause does not apply to the class-of-one theory in the context of public employment disputes. *Enquist*, 553

U.S. at 609 ("[R]atifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'") (quoting *Connick v. Myers*, 461 U.S. 138, at 154 (1983)). As such, Plaintiff's Equal Protection claim against the Defendants must be dismissed.

### f. Even if Spears alleges facts that constitute a constitutional violation, the constitutional violation is not clearly established.

A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that her conduct is unlawful and violates the right in question. *Wernecke v. Garcia*, 591 F.3d 386, 392–93 (5th Cir. 2009). The Supreme Court recently "reiterate[d] the longstanding principle that clearly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal quotations omitted).

As the Supreme Court recently explained:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (internal quotations and citations omitted).

Here, for all the reasons referenced above, Spears has not alleged facts from which this Court could conclude that *every reasonable official* in Defendants' respective positions would know that their alleged conduct was unlawful.

      **g. Even if Spears alleges facts that constitute constitutional violations *and* the constitutional violations are clearly established, Defendants' actions were objectively reasonable.**

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown*, 623 F.3d at 253. "An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Id.* "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.* Here, Spears has not alleged facts demonstrating that no reasonable officer in Defendants' respective positions could have believed his actions were proper. *See id.* It is not objectively unreasonable to require a state trooper to pass a physical fitness test related to his job duties sometime within a 15-month timespan (between May 31, 2016 when Spears alleges he was informed he was physically unfit for duty and September 1, 2017 when Spears alleges he was put on a performance improvement plan). *See* ECF No. 25 at 5–6. Consequently, Defendants are entitled to qualified immunity from suit.

## IV.
## Conclusion

Spears fails to overcome Defendants' qualified immunity as he fails to state valid constitutional claim. Accordingly, Defendants ask the Court to dismiss with prejudice all claims asserted against them.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Briana M. Webb
**BRIANA M. WEBB**
Assistant Attorney General
Attorney-in-Charge
Texas State Bar No. 24077883
Briana.webb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin TX 78711
T: (512) 463-2080/F: (512) 370-9891

**ATTORNEYS FOR DEFENDANTS**
**McCRAW, BAKER, WEBSTER,**
**BRADBERRY, LIVINGSTON,**
**GONZALEZ, FLEMING, SANCHEZ,**
**WILKIE, NEGRI, JACKSON, STOKKE,**
**DRABBLE, AND SPARKS**

## NOTICE OF ELECTRONIC FILING

I, BRIANA M. WEBB, Assistant Attorney General of Texas, certify that I have electronically submitted for filing a true copy of the foregoing in accordance with the Court's Case Management/Electronic Case Files **(CM/ECF)** system of the Western District of Texas on April 15, 2019

/s/ Briana M. Webb
BRIANA M. WEBB
Assistant Attorney General


## CERTIFICATE OF SERVICE

I, BRIANA M. WEBB, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served via the Court's Case Management/Electronic Case Files (**CM/ECF**) system on April 15, 2019 to all counsel of record.

/s/ Briana M. Webb
BRIANA M. WEBB
Assistant Attorney General