# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| BILLY L. SPEARS, | § |
| | § |
| V. | § |
| | § CAUSE NO. A-17-CA-1105-RP |
| STEVEN McCRAW et al. | § |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Mach, Flores, Leon, Pulliam, Johnson and Watson's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 27); Defendants McCraw, Baker, Webster, Bradberry, Livingston, Gonzalez, Fleming, Wilkie, Negri, Jackson and Stokke's Motion to Dismiss Plaintiff's Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 28); Defendants Drabble and Sparks' Motion to Dismiss Plaintiff's Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 37); and all associated responses and replies. The district court referred the above motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. PROCEDURAL BACKGROUND

Plaintiff Billy L. Spears is a trooper with the Texas Highway Patrol, a division of the Texas Department of Public Safety. Dkt. No. 25 at 2. On April 29, 2015, Spears sued eleven defendants: (1) the DPS; (2) DPS Director Steven McCraw; (3) DPS Assistant Director David Baker; (4) DPS Highway Patrol Division Chief Luis Gonzalez; (5) DPS Inspector General Rhonda Fleming; (6) DPS HPD Major Michael Bradberry; (7) DPS Office of Inspector General Captain Luis Sanchez; (8) DPS Highway Patrol Captain K.B. Wilkie; (9) DPS OIG Lieutenant Brandon Negri; (10) DPS Highway

Patrol Lieutenant Jimmy Jackson; and (11) Texas Alcoholic Beverage Commission Sergeant Marcus Stokke. *See Spears v. Tex. Dep't of Public Safety, et al.*, No. 1:15-CV-511-RP (W.D. Tex.) (*Spears I*). In *Spears I*, Spears alleged that the Defendants retaliated against him for filing grievances in violation of his First Amendment rights and that Stokke violated his Fourth Amendment right to be free from unreasonable searches and seizures. Dkt. No. 25 at 20. Spears's claims in that case were based on an interaction at a concert on May 10, 2014, where Stokke detained Spears after he attempted to take an alcoholic beverage into a public area. *Id.* at 21. Spears filed a complaint against Stokke, and Spears alleged that DPS filed disciplinary complaints against him in retaliation. *Id.* at 22-26. The Defendants moved for summary judgment in that case, which the Court granted as to Spears's constitutional claims. *Spears I*, Dkt. 31. The parties dismissed Spears' remaining Texas Whistleblower Act claim by agreement.

In this case, Spears brings a civil rights action under 42 U.S.C. § 1983, originally suing eighteen defendants: (1) DPS Director Steven McCraw; (2) DPS Deputy Director David Baker; (3) DPS Regional Commander Jack Webster; (4) Texas Highway Patrol Major Michael Bradberry; (5) Texas Highway Patrol Captain Audra Livingston; (6) Texas Public Safety Commission Chairman Stephen P. Mach; (7) Texas Public Safety Commissioner Manny Flores; (8)Texas Public Safety Commissioner Cynthia Leon; (9) Texas Public Safety Commissioner Jason K. Pulliam; (10) Texas Public Safety Commissioner Randy Watson; (11) Former Texas Public Safety Commissioner Faith Johnson; (12)DPS Assistant Director Luis Gonzalez; (13) DPS Inspector General Rhonda Fleming; (14) DPS OIG Captain Luis Sanchez;[1] (15) Texas Highway Patrol Captain K. B. Wilkie; (16) DPS OIG Lieutenant Brandon Negri; (17) Texas Highway Patrol lieutenant Jimmy Jackson; and

---

[1]Spears asserts that Sanchez is retired and he is no longer a defendant in this suit. Dkt. No. 25 at 12.

(18) TABC Sergeant Marcus Stokke. Dkt. No. 12 at 2-3. In his First Amended Complaint, Spears alleged that these defendants participated in a conspiracy to violate his civil rights, retaliated against him for exercising his First Amendment rights, or failed to supervise those who retaliated. *Id.* at 8-10. He sought injunctive relief against Defendants in their official capacity and damages against Defendants in their individual capacity. *Id.* at 10. On the Defendants' motion the district court dismissed all claims against all defendants, but allowed him to amend his complaint. Dkt. No. 22.

In the subsequently-filed Second Amended Complaint, Spears drops his claims against Sanchez, but adds claims against two new defendants, Michael Sparks and Willie Drabble (who at different times served as Spears' former supervisor at DPS). He also adds factual background to support of his claims, and adds new § 1983 claims against all Defendants for violations of his Fourteenth Amendment due process and equal protection rights. Along with his First Amendment claims, Spears' claims are: (1) denial of due process, (2) conspiracy to deny due process, (3) failure to supervise those that denied him due process, (4) denial of equal protection, (5) conspiracy to deny him equal protection, and (6) failure to supervise those that denied him equal protection. Dkt. No. 25. Spears brings these claims against Defendants only in their individual capacities.

All defendants now move to dismiss Spears' Second Amended Complaint, asserting they are entitled to qualified immunity on all of his claims.

## II. FACTUAL BACKGROUND[2]

On April 17, 2016, while *Spears I* was still pending, Spears aggravated a pre-existing knee injury. He met with his primary care physician on April 26, 2016, and the physician wrote a letter recommending that he be exempted from the DPS's semi-annual physical fitness test until he could

---

[2] All facts are taken from Spears' Second Amended Complaint (Dkt. No. 25).

3

be seen by a specialist. Spears informed his acting supervisor, Defendant Willie Drabble, on May 23 or 24 that, because of the doctor's schedule, he could not see an orthopedist before the end of the testing period, and Drabble advised Spears to write a memo to his captain, Defendant Audra Livingston, explaining the situation. Dkt. No. 25 at 5. Spears drafted a memo to Livingston and showed it to Drabble, who read it and said, "That's right." Sgt. Drabble advised Spears to fill out a waiver form for the physical-fitness test, and Spears did so. Sgt. Drabble signed and dated the request, checked the box recommending approval, and then submitted both the waiver form and the memo to Spears' chain of command. *Id.*

On May 26, 2016, while en route to an assignment, Corporal Sandy Taylor called Spears and told him that their lieutenant, Defendant Jimmy Jackson, said Spears would need a medical evaluation before he could continue working. Spears advised Cpl. Taylor to fax the form to his physician, and Cpl. Taylor faxed it on May 26, 2016. Spears's physician signed the form and returned it to Cpl. Taylor on May 27, 2016. On May 31, 2016, Spears was informed that he was unfit for duty and he was ordered to return to East Texas. *Id.* at 5-6. After returning to East Texas on June 1, 2016, Spears advised Cpl. Taylor by telephone that he would return to the local office the following day to complete paperwork. About an hour-and-a-half later, Cpl. Taylor called Spears and said Defendant Livingston had forbidden Spears from returning to the office, even to complete paperwork. Spears' supervisors placed him on paid medical leave. *Id.* at 6.

Spears had surgery on his knee on June 30, 2016, but because of complications he did not return to work until December 17, 2016. He was thus absent from the office from May 26, 2016,[3]

---

[3] Spears' Second Amended Complaint reads "May 26, 2017, until December 17, 2016." The Court assumes the 2017 date is an error.

until December 17, 2016. Because of his ongoing recovery, Spears alleges he was unable to pass the physical-fitness test during the Fall of 2016 and Spring of 2017. Spears asserts he never attempted to pass the PFT because: (1) he was on medical leave and exempt from the test according to DPS policy, and (2) did not know he was expected to take the test while he was on medical leave. *Id.*

On September 1, 2017, Spears was told that he was expected to complete the physical fitness test and that his request for a medical waiver had been denied. *Id.* Spears was classified as non-compliant with DPS policy because he had not taken and passed a physical fitness test while he was on medical leave, and as a result, he was placed on a Performance Improvement Plan and warned that he was on the verge of termination. *Id.* The PIP was signed and served on Spears by Defendant Sparks at the direction of Defendant Bradberry. *Id.* at 6. Spears took and passed the physical fitness test on September 4, 2017, and was released from the PIP, although it remained in his file. *Id.* at 7. Spears alleges that the Defendants denied him due process by denying him notice of their adverse decision regarding his fitness test waiver.

On September 11, 2017, Spears obtained copies of the documents denying his medical waiver, and he alleges that many of the dates and signatures on those documents, as well as his own memo, were altered by Bradberry in order to implement a PIP and terminate him. *Id.* at 7-8. Spears alleges that the approval of a medical waiver is routinely granted, but his request was arbitrarily denied by Livingston, Bradberry, Webster, and Baker in retaliation for filing *Spears I.* Spears alleges that Defendants Webster and Baker knew the waiver request form was a forgery, but they signed it anyway. Spears alleges that McCraw was aware the other Defendants were planning to deny Spears the medical waiver and tacitly or directly authorized it. *Id.* at 11. Spears further alleges that these

5

events are part of an "ongoing pattern of retaliation" when combined with the allegations from *Spears I*, and that DPS has an unwritten policy of retaliation against its employees who complain about misconduct within DPS. *Id.* at 12.

Spears also alleges that "OIG is rife with its own misconduct and conflicts of interest," and that there is "widespread corruption and cronyism at DPS" which is known by McCraw, Mach, Flores, Leon, Pulliam, Watson and Johnson. *Id.* Spears asserts that "It is widely known within DPS that OIG covers up misconduct to protect politically-favored DPS employees." *Id.* Spears maintains that Defendant Drabble lied to an investigator from the Dallas County District Attorney's Office regarding the date and authenticity of his signature on the medical waiver request, and that he gave the same false statement to an OIG investigator that he gave to the DA investigator. Spears alleges that Defendant Drabble was directed to do so by Defendant Bradberry. *Id.* at 14-15. Spears asserts that "the Defendants violated Spears's equal protection rights by trying to cover up the forgery." *Id.* at 15. He asserts that Fleming, as head of OIG, was personally aware of this coverup, that McCraw is personally aware that Bradberry forged records, and that McCraw, Bradberry and the Commissioner Defendants tolerate corruption and cronyism in the DPS. *Id.* Additionally, Spears asserts that Commissioner Defendants were aware of the DPS's history of retaliating against Spears because Spears had previously sued DPS and some of the Defendants in this suit in *Spears I* for retaliating against him, and those facts were widely reported in the press. Spears complains that despite their notice of prior events, Defendants Webster, Baker, McCraw, Mach, Flores, Leon, Pulliam, Watson, and Johnson failed to supervise the other Defendants who continued to retaliate against Spears.

## II. LEGAL STANDARD

A.   **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P.12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), cert. denied, 552 U.S. 1182 (2008). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "Pleadings" for purposes of a Rule 12(b)(6) motion include the complaint, its attachments, and documents that are referred to in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

B.    **Incorporation by Reference of Pleadings in Other Cases**

In his Second Amended Complaint, Spears purports to "incorporate[ ] by reference" his Original Petition in *Spears I* , which he attached to his Second Amended Complaint, as well as the Original Complaint in *Lubbe v. Milanovich et al*, Case No. 1:18-cv-1011-RP (W.D. Tex.), another case currently on file in this Court, which he also attached. In its prior order in this case, the district court considered the Petition in *Spears I*, which Spears incorporated by reference. Dkt. No. 22 at 2 n.3. Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). A court is permitted, however, to rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007).

However, Rule 10(c) of the Federal Rules of Civil Procedure outlines the process of "adoption by reference," which provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." FED.R.CIV.P. 10(c). In this context: (1) the secondary document must be a pleading—a complaint, cross-complaint, answer, or reply, *see* FED.R.CIV.P. 7, and (2) the primary and secondary documents must be filed in the same case. Referencing a pleading from a different case is impermissible, even if the two cases involve the same parties. *See* 11 Charles Alan Wright, Arthur R. Miller & M. Kane, FEDERAL PRACTICE & PROCEDURE § 1326, at 429 (2d ed. 2012); *Macias v. New Mexico Department of Labor*, 300 F.R.D. 529, 546 (D. N.M. 2014). "Although there is some disagreement on this point, courts typically hold that Rule 10(c) does not allow a party to adopt pleadings from a wholly separate action, even if that action is between the same parties. *Amini Innovation Corp. v. McFerran Home

*Furnishings, Inc.*, 301 F.R.D. 487, 492 (C.D. Cal. 2014); *see Muttathottil v. Gordon H. Mansfield*, 381 Fed. Appx. 454, 457 (5th Cir. 2010) (stating that although Rule 10(c) "permits references to pleadings and exhibits in the same case, … there is no rule permitting the adoption of a cross-claim in a separate action in a different court by mere reference"); *Texas Water Supply Corp. v. Reconstruction Fin. Corp.*, 204 F.2d 190, 196 (5th Cir. 1953); *Muhammad v. Bethel-Muhammad*, 2012 WL 1854315, *3 n.5 (S.D. Ala. 2012) ("In short, the viability of the plaintiff's action is to be measured by his amended complaint, not by the avalanche of other filings with which he has inexcusably flooded the Court and the litigants over the course of two lawsuits.").

Regardless of whether Rule 10(c) would permit a plaintiff to incorporate allegations from a pleading in a previous action in some cases, such a pleading would still remain subject to Rule 8(a)'s mandate that a plaintiff provide a short and plain statement of his claim in the complaint. Spears' adoption by reference in his Second Amended Complaint of the two other federal court actions is improper. While the Court can certainly take judicial notice that *Spears I* was filed, and consider that as the basis for the claim of retaliation in this suit, the claims raised in *Spears I* and in *Lubbe*, have no relevance to this case. Moreover, Spears fails to explicitly identify which portions of the pleadings he is adopting by reference, thereby failing to meet the requirements of Rule 8(a). A properly pleaded complaint must give "fair notice of what the claim is and the grounds upon which it rests." *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009). Spears' references to the complaints in other actions fail to do so, thereby rendering improper any reliance on the allegations pleaded therein.

## III. ANALYSIS

Defendants assert they are entitled to qualified immunity for all of Spears' claims. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). There are two steps to determining whether a defendant is protected by qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the court asks whether the official "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Second, the court asks whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* Courts have the discretion to decide the order in which to answer these two prongs. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once a defendant raises qualified immunity, the burden shifts to the plaintiff to plead "specific facts that, if proved, would overcome the individual defendant's immunity defense." *Jackson v. City of Beaumont Police Dep't,* 958 F.2d 616, 620 (5th Cir. 1992) (quoting *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988)). "[C]omplaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Id.* In order to shift the burden to the plaintiff, "[t]he defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

Additionally, in order to state a claim under § 1983, a plaintiff must allege a violation of the Constitution or a federally granted right, and that the violation was committed by someone acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Spears alleges violations of his First Amendment rights as well as his Fourteenth Amendment rights to due process and equal protection. He alleges all Defendants were involved in a civil conspiracy to violate these rights, and

failed to supervise those who violated his rights. As noted, all of the Defendants move to dismiss the Second Amended Complaint on the basis qualified immunity.

 A. **First Amendment**

Spears alleges that Defendants engaged in a conspiracy to retaliate against him for filing *Spears I*, in violation of his First Amendment rights. To make out a claim of retaliation under the First Amendment based on protected speech, Spears must demonstrate that: (1) he suffered an adverse employment action; (2) the speech involved a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern outweigh the defendant's interest in promoting efficiency; and (4) the speech motivated the defendant's action. *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015) (citing *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc)). Defendants argue that Spears cannot identify an adverse employment action supporting a violation of his First Amendment rights. Defendants identify three events that Spears might assert qualify as adverse employment actions: denial of his medical waiver; placing Spears on a PIP; and Spears' voluntary transfer. Dkt. No. 28 at 14.

To qualify as an adverse employment action that supports a First Amendment retaliation claim under § 1983, the act taken must alter an important condition of employment, result in the denial of an employment benefit, or have a negative consequence on the plaintiff's employment. *See Breaux v. City of Garland*, 205 F.3d 150, 159 & n.16 (5th Cir.2000). For purposes of First Amendment retaliation claims, the Fifth Circuit has restricted its definition of an adverse action to "ultimate employment decisions" such as discharges, demotions, refusals to hire, refusals to promote, and formal reprimands. *Id.* at 157. Actions such as decisions concerning, "pay increases, administrative matters, and departmental procedures," do not rise to the level of a constitutional

deprivation. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 123 (5th Cir. 1991)). The denial of Spears' medical waiver qualifies as a administrative matter that does not rise to the level of an adverse employment action. Similarly, Spears' lateral transfer does not qualify as an adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482-83 (5th Cir. 2001) (transferring officer from foot and bike patrol to a patrol car was not a demotion-like transfer); *Johnson v. City of San Antonio*, 273 F.3d 1094 (5th Cir. 2001) (same).

As to the PIP, Spears argues that his placement on a PIP constitutes an "implicit reprimand" and qualifies as a form of discipline since it goes in his permanent file and reduces his opportunities for promotion and advancement. The Fifth Circuit has held that "formal reprimands" qualify as adverse employment actions." *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999). But no case has recognized an "implicit reprimand" as being sufficient to support a First Amendment retaliation claim. "[A] formal reprimand, by its very nature, goes several steps beyond a criticism or accusation and even beyond a mere investigation; it is punitive in a way that mere criticisms, accusations, and investigations are not." *Id. at* 512 n.7. To qualify as an adverse action, the Defendants' action must cause "some serious, objective, and tangible harm[.]" *Serna,* 244 F.3d at 4823. Spears has failed to plead any tangible harm he suffered related to his placement on a PIP, from which he was subsequently removed. He does not identify any opportunity for promotion or advancement that has been denied him by DPS because of the PIP, or the fact that it remains in his file. *See Wilson v. Miller*, 821 F.3d 963, 968 (8th Cir. 2016) ("Standing alone, a poor performance rating does not constitute an adverse employment action because it has no tangible effect on the employee's

conditions of employment."). Spears' temporary placement on a PIP does not qualify as an adverse employment action.

As a result, Spears cannot make out a claim that his First Amendment rights were violated, entitling Defendants to qualified immunity on these claims.[4]

**B.      Due Process**

Spears alleges that Defendants denied him due process by their failure to notify him that they denied his medical waiver, which led to him being placed on a PIP. Dkt. No. 25 at 9. Defendants allege that Spears' due process claim fails because, as an at-will employee, he must also allege a deprivation of a relevant property or liberty[5] interest, and he has failed to do so. *Bishop v. Wood*, 426 U.S. 341 n.8 (1976). Spears responds that a property interest in a job may be created when a government body adopts rules limiting the circumstances when an employee may be discharged and that Defendants violated DPS policy when they withheld notice of the denial of his medical waiver

---

[4] Spears asserts that Defendants failed to address his "right to petition" First Amendment claim. In his Second Amended Petition, Spears claims that Defendants "retaliated against him for exercising his right to free speech and his right to petition for redress of grievances as guaranteed by the First Amendment." vDkt. No. 26 at 16. The analysis for both claims is the same. *Borough of Duryea Pa. v. Guarnieri*, 564 U.S. 379, 398 (2011)v(the framework used to govern retaliation claims by public employees under the First Amendment Speech Clause and Petition Clause is the same). And thus the Court's determination of that claim is the same—Spears has failed to make out a claim.

[5] Spears has nowhere alleged a violation of his due process rights based upon a liberty interest. Despite this, Defendants address this potential claim. A liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000). Spears was not terminated, and therefore he has not adequately pled a violation of a liberty interest in his Second Amended Complaint. Moreover, a deprivation of liberty due process claim lies against the government employer, not a government employee or official. *Sims v. City of Madisonville*, 894 F.3d 632, 642–43 (5th Cir. 2018). Spears has only pled individual capacity claims against the Defendants.

and "tried to terminate him." Dkt. No. 32 at 16. Additionally, Spears alleges that termination is not necessary to support his due process claim because "even due process claims with *de minimus* damages are constitutionally-cognizable claims." Dkt. No. 32 at 17 (citing *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 222-23 (5th Cir. 2012)).

The Fourteenth Amendment protects citizens from government acts that "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim based on the deprivation of a property interest in his employment, a plaintiff must show that (1) he has a protected property interest in his employment, and (2) the termination of his employment was effectuated without due process. *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996); *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993). Property, in the context of the due process clause, "is an individual entitlement grounded in state law, which cannot be removed except for cause." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (internal quotation marks omitted). Certain public employees enjoy a property interest in their continued employment, and are entitled to procedural due process prior to termination. *See Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003). "In Texas," however, "there exists a presumption that employment is at-will unless that relationship has been expressly altered . . . by contract . . . or by express rules or policies." *Id.* (citations omitted). If state law creates such a property right, the public employee is entitled to procedural due process before the government can terminate his employment. *See McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir.1996).

To establish a property interest in his job, Spears must "allege with specificity the particular state rule, regulation, law[,] or understanding between the parties giving rise to the requirement of just cause prior to termination." *Brown v. Tex. A&M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986).

14

Spears' Second Amended Complaint fails to allege a specific basis for his alleged property interest in his employment, as it merely refers to "DPS policy." In his Response to Defendants Drabble and Sparks' Motion to Dismiss, Spears belatedly claims he is relying on Section 411.007(c) of the Texas Government Code which states that "An officer or employee of the department may not be discharged without just cause." Dkt. No. 41 at 6. Spears failed to plead this in his Second Amended Complaint.

But whether he has a property interest in his job is not dispositive, because even if he had one, Spear has failed to plead that he was deprived of it, since he is still employed at DPS. Spears cites to *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 222-23 (5th Cir. 2012), for the proposition that no injury is required to make out a due process claim. However, Spears misrepresents the holdings in *Bowlby*. In *Bowlby*, the City of Aberdeen's zoning board granted the plaintiff a permit to operate a snow-cone business for a specific street corner near the entrance to town. Shortly thereafter, the zoning board changed its mind and revoked the permit at a meeting to which the snow-cone proprietor was not invited. The Fifth Circuit found that *Bowlby* had a property interest in the license and that she was denied due process when it was revoked. It further found that the possibility of the Mayor or Board of Alderman reversing the revocation did not undermine the due process injury as the district court found. Spears seems to be asserting that *Bowlby* stands for the proposition that no deprivation of a property interest is required to make out a due process claim, based on the statement in *Bowlby* that "the denial of due process is actionable for nominal damages without proof of actual injury." *Id*. at 222. However, in *Bowlby*, the court found the plaintiff suffered a deprivation when her license was revoked—its analysis of whether a constitutional injury occurred was separate from its initial analysis of whether a property deprivation occurred. In this

15

case, Spears is still employed with DPS. Therefore, he cannot plead the requisite deprivation of a property interest to make out a violation of his due process rights. Moreover, Spears has pointed to no case in the public employment context where the employee made out a due process claim without suffering a deprivation of a property right, such as a termination. Because he did not suffer a deprivation of any property right, Spears cannot make out a constitutional violation to support his due process claim, and Defendants are entitled to qualified immunity.[6]

## C. Equal Protection

Spears contends he also is bringing equal protection claims, and they are contained in Paragraphs 50 and 51 of the Second Amended Complaint. These paragraphs allege that Drabble's signature on the medical waiver forms was forged and that "Defendants violated the Plaintiff's equal protection rights by covering up the forgery." Dkt. No. 25 at 15. Spears relies on *Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983) to support the validity of this claim. *Ryland v. Shapiro* stands for the proposition that the right of access to the courts, or the right to petition, is a fundamental right protected by the Constitution. *Id.* The right has been said to derive from the Privileges and Immunities Clause of Article IV, section 2 of the Constitution, as well as from the Due Process clauses of the Fifth and Fourteenth Amendments, and the right to petition found in the First Amendment. *Crowder v. Sinyard*, 884 F .2d 804, 811 n. 7 (5th Cir.1989) (citing *Ryland*, 708 F.2d at 971-72), abrogated on other grounds by *Horton v. California*, 496 U.S. 128 (1990). Spears'

---

[6] Spears appears to assert only a procedural and not a substantive due process claim. To succeed with a claim based on substantive due process in the public employment context, Spears must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citation omitted). Once again, because he is still employed at DPS, Spears could not succeed on a substantive due process claim.

references to *Ryland* —which addressed the right to petition or to access the courts, and not the right to equal protection—is confusing, but the Court will address it nonetheless.

Spears relies on *Ryland* as support for his assertion that the right of access to the courts is broad enough to encompass his claim. But in *Foster v. City of Lake Jackson*, 28 F.3d 425 (5th Cir.1994), the Fifth Circuit revisited *Ryland* and its successor *Crowder*, and made abundantly clear that those cases stood only for the proposition that the right of access to courts is implicated when government officials take actions that either delay or block a plaintiff's ability to file suit altogether. *Id.* at 430. The *Foster* court expressed its disagreement with other courts that had relied on *Ryland* for any broader interpretation of the right other than that it protects the right to institute suit. *Id.* at n.7. In short, *Foster* clarified that if a plaintiff is able to file suit, the right is simply not implicated. *See Perales v. Supreme Court of Tex.*, 140 F.3d 1039, 1039 (5th Cir.1998) (unpublished); *Ellis v. Magee & Devereux*, 2001 WL 167744, at *3 (E.D. La. Feb. 15, 2001); *LaBarbera v. Angel*, 95 F. Supp. 2d 656, 665 (E.D. Tex. 2000). That is exactly the situation here, as Spears has in fact filed suit. Spears thus cannot state a claim for deprivation of the constitutional right of access to the courts. *See Smart v. Holder*, 2009 WL 2498213, at *6 (W.D. Tex. Aug.12, 2009) (finding access to court right not implicated because plaintiff was able to file suit).

To the extent Spears makes an equal protection claim, the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. To establish a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury. *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292-93 (1987)). Typically, a plaintiff must also show that the actions of the government

official were motivated by improper considerations, such as sex, race, or religion. *See Bryan v. City of Madison Miss.*, 213 F.3d 267, 277 (5th Cir.2000). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.1999).

In this case, Spears, a white male, claims that he is the only DPS employee who has ever been denied a medical waiver and required to take a physical test while on medical leave. Dkt. No. 25 at 8-9. As he is not a member of a protected class, Spears cannot make out an equal protection claim. To the extent he asserts a "class of one" claim, such a claim is not viable in the context of public employment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 597 (2008); *see also Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (citing *Engquist* and noting that "class-of-one equal protection claims are inapposite in the context of discretionary public-employment decisions"). Plaintiff's equal protection claim thus fails as a matter of law.

**D.  Conspiracy Claims**

Spears also claims a civil conspiracy among all the Defendants "to retaliate against [him] for exercising his constitutional rights." Dkt. No. 25 at 11. To state a § 1983 conspiracy claim, a plaintiff must allege facts to support (1) the existence of a conspiracy involving state action, and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. The plaintiff must show that the defendants agreed to commit actions that violated the plaintiff's constitutional rights. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). A bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient to state a claim. *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); *see also Green v. State Bar of Tex.*, 27 F.3d 1083,

1089 (5th Cir. 1994) (a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties). In this case, the only allegations Spears makes to support his conspiracy claim are bald allegations that the parties entered into a wide-ranging conspiracy to retaliate against him for bringing *Spears I*. Further, "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (citations and quotations omitted). There must be an actual deprivation of a constitutional right before a conspiracy to deny such a right arises. *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960), *cert. denied*, 366 U.S. 955 (1961). As discussed above, Spears has failed to plead a violation of his constitutional rights. Without an actual violation of a constitutional right the § 1983 conspiracy claim fails.

**E.     Failure to Supervise Claims**

A supervisor is only liable under § 1983 if he (1) fails to adequately train or supervise the officers involved in the constitutional deprivation or fails to promulgate policy, and that failure gave rise to the deprivation, or (2) "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir.2011); *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir.2001). Because, as discussed above, Spears has not pled a violation of his constitutional rights, Defendants are entitled to qualified immunity for his failure to supervise claims.

**IV. RECOMMENDATION**

In light of the foregoing, the undersigned **RECOMMENDS** that the district court **GRANT** all of the motions to dismiss (Dkt. Nos. 27, 28 and 37), and dismiss all of the claims against all of the Defendants in the case.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 8th day of August, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE