UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Billy L. Spears, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-1105 |
| | § | |
| Steven McCraw, David Baker, Jack Webster, | § | |
| Michael Bradberry, Audra Livingston, | § | |
| Stephen P. Mach, Manny Flores, | § | |
| A. Cynthia "Cindy" Leon, Jason K. Pulliam, | § | |
| Randy Watson, Faith Johnson, | § | |
| Luis Gonzalez, Rhonda Fleming, | § | |
| Luis Sanchez, K.B. Wilkie, Brandon Negri, | § | |
| Jimmy Jackson, Marcus Stokke, | § | |
| Willie Drabble, and Michael Sparks, | § | |
|     Defendants. | § | |

**Defendants' Joint Motion for Sanctions, Motion for Disqualification, and Motion for an Evidentiary Hearing**

Defendants Steven McCraw, David Baker, Jack Webster, Michael Bradberry, Audra Livingston, Stephen Mach, Manny Flores, A. Cynthia Leon, Jason K. Pulliam, Randy Watson, Faith Johnson, Luis Gonzalez, Rhonda Fleming, Luis Snachez, K.B. Wilkie, Brandon Negri, Jimmi Jackson, Marcus Stokke, Willie Drabble, and Michael Sparkes submit this motion for sanctions and disqualification of Plaintiff's counsel, Ty Clevenger. Defendants request an expedited briefing schedule and an evidentiary hearing. In support thereof, Defendants respectfully show the following:

### I. Summary of the Argument

Mr. Clevenger has been in contact with one or more parties represented by the Office of the Attorney General ("OAG"), causing substantial prejudice to the Defendants. Despite repeated requests by Defense counsel to cease communication with their clients, Mr. Clevenger responded that he is entitled to communicate with represented persons under his First Amendment right as a "blogger," and refused to provide information regarding this continued contact. Mr. Clevenger's rights

as a blogger, however, do not override his ethical duties as a lawyer in the State of Texas. Mr. Clevenger violated Texas Disciplinary Rules of Professional Conduct 4.02, Rule 4.2 of the ABA Model Rules of Professional Conduct, and the Western District's Local Rules AT-6 and AT-7. His actions warrant sanctions to include disqualification from this lawsuit.

## II. Relevant Background and Procedural Posture

### a. Procedural Background of *Spears I* and *Spears II*

In April of 2015, Mr. Clevenger filed his first suit on behalf of Billy Spears, a senior trooper with the Texas Department of Public Safety ("DPS"), against eleven defendants, including Louis Sanchez.[1] *See Billy L. Spears v. Texas Department of Public Safety, et al.*, Case No. 1:15-cv-00511-RP (W.D. Tex.) ("*Spears I*"). All Defendants were represented by the OAG. The gravaman of *Spears I* centered on the allegation that defendants "retaliated against [Plaintiff] for exercising his right to perition for redress of his grievances as guaranteed by the First Amendment to the U.S. Constitution," violated his rights under the Equal Protection Clause, and denied him due process in violation of the Fourteenth Amendment. *See Spears I* at ECF No. 1–3. Plaintiff filed a stipulation of dismissal in *Spears I*, and this Court dismissed *Spears I* without prejudice on April 10, 2018. *See Spears I* at ECF Nos. 55, 56. Plaintiff then filed the instant case ("*Spears II*").

In his *Spears II* original complaint, Plaintiff named many of the same defendants from *Spears I*, including Rhonda Fleming as the inspector general of DPS, and Louis Sanchez as "a captain in the Office of Inspector General of DPS." ECF No. 1 at 3. Waivers of service were executed as to all defendants, including Mr. Sanchez, identifying the Assistant Attorneys General representing the defendants. [ECF No. 2-7].[2] In his Second Amended Complaint, Spears sues twenty (20) defendants.

---

[1] Mr. Sanchez's first name is "Louis," not "Luis." For purposes of this motion, unless it is a direct quote from the complaint, Mr. Sanchez's first name is spelled "Louis."
[2] In order to receive representation by the OAG, the defendant must request representation. In this case, Mr. Sanchez requested legal representation from the OAG via email. Ex. A.

2

ECF No. 25. Ten of the twenty Defendants were also named defendants in *Spears I*. ECF No. 25 at 19. Plaintiff incorporated by reference the complaint from a separate lawsuit also filed by Mr. Clevenger, *Darren Lubbe v. Mark Milanovich, et al.*, Case No. 1:18- cv-01011 (W.D. Tex.), which alleges claims similar to those contained in *Spears I & II*. ECF No. 24-1 at 2.[3] The interplay between the three lawsuits is relevant because the claims and parties overlap, and the claims and parties form the contours of Mr. Clevenger's ethical responsibilites.[4]

### III. Mr. Clevenger's Communications with Represented Parties and the OAG

In the Second Amended Complaint in *Spears II*, Plaintiff notes that he "became aware of additional evidence reflecting of [sic] corruption and retaliation within DPS." ECF No. 24-1 at 2. In this Second Amended Complaint, filed on February 11, 2019, Plaintiff removed Mr. Sanchez as a Defendant "[b]ased on statements that Mr. Sanchez has made to third parties." Plaintiff further states that Mr. Sanchez "will testify to widespread corrpution and cronyism in DPS…". ECF No. 24-1 at 12, ¶43. Plaintiff then cites to the *Lubbe* complaint.[5] *Id.*

While under the guise of a "blogger," Mr. Clevenger wrote an email directly to the DPS Commissioners named as Defendants in *Spears II* and who were respresented by AAG Kelsey Warren. Ex. E. The Commissioners are not designated public information officers. In the email, Mr. Clevenger

---

[3] After the filing of the Second Amended Complaint, AAG Briana Webb appeared as the new attorney-in-charge, with AAG Molinare remaining as co-counsel. ECF No. 26. The appearance was made on behalf of all DPS and OIG Defendants, including Mr. Sanchez (despite the fact he was no longer named as a defendant in the Second Amended Complaint). *Id.*

[4] The Defendants filed motions to dismiss Plaintiff's Second Amended Complaint on February 25, 2019. *See* ECF Nos. 27 & 28. On August 8, 2019, the Court issued an R&R recommending the Defendants' motions to dismiss be granted, and the Plaintiff's Second Amended Complaint be dismissed in its entirety. *See* ECF No. 42. The timing of the instant motion is not associated with the timing of the R&R. After learning of the ethical violations of Mr. Clevenger, counsel of record immediately began the process of drafting this motion and sought approval from her supervisors to seek sanctions. Acknowledging that this case is not closed, and Mr. Clevenger is still the Plaintiff's attorney of record until the time for appeal has passed, Defendants find it prudent to proceed with the filing of this motion.

[5] *Lubbe* was filed on November 27, 2018, and fully incorporates by reference the Original Complaint from *Spears I* and the First Amended Complaint from *Spears II*. *See Lubbe* ECF No. 1 at 18, ¶ 68. The *Lubbe* complaint is fully incorporated by reference into Plaintiff's Second Amended Complaint in the present case. ECF No. 24-1. Plaintiff's allegations in *Lubbe* against Defendant Fleming and other DPS officials are substantially similar to those in the *Spears II* complaint. *Lubbe* at ECF No. 1 at 15, ¶58.

represented that he was a blogger requesting information; he did not mention that he was the Plaintiff's attorney currently suing them in multiple lawsuits. AAG Briana Webb (representing Mr. Sanchez, Fleming, and other DPS and OIG officials), and AAG Kelsey Warren (representing the DPS Commissioners) contacted Mr. Clevenger to share their concerns about his communications, and to point out that the applicability of Texas Disciplinary Rules of Professional Conduct 4.02.[6] Ex. F. Mr. Clevenger represented that he has "the right as a citizen to file open records requests throught DPS OGC and to ask questions about matters of public concern."[7] *Id.* He further claimed that as "a blogger," he still has First Amendment rights. *Id.*

AAG Heather Rhea, who represents the Commissioners and Fleming in *Lubbe*, informed Mr. Clevenger that the information he was seeking from the Commissioners—her clients in *Lubbe*—was related to the subject matter of the claims asserted in *Lubbe*, and requested that he seek information according to applicable procedural rules. Ex. G. Mr. Clevenger admitted that "Rule 4.02 is limited to conversations about the 'subject of representation,'" but expressed confusion regarding open record requests dealing with litigation. *Id.* Defense counsel explained to Mr. Clevenger, again, that his request was directly related to the litigation and therefore excepted under Tex. Gov't. Code 552.103.[8] Ex. G.

That same day, Mr. Clevenger also sent a public information request in the form of a letter to the OAG Open Records Division and DPS Office of General Counsel. Ex. H. In this letter, Mr. Clevenger represents that he has been communicating with Louis Sanchez, the defendant in *Spears II* whom he had "dropped" from the Second Amended Complaint on February 11, 2019. *Id.*; Ex. I. No

---

[6] Tex. Disciplinary R. Prof. Conduct 4.02(a) states: In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

[7] It is not the contention of the OAG that Mr. Clevenger does not have a right to file a proper public information request.

[8] It seems as though Mr. Clevenger already knew that, as the PIRs published on his blog from February 20, 2019 cite directly to that exception. *See, e.g.*, Ex. D. These PIRs and correspondence between Mr. Clevenger and DPS OGC were dated approximately three months before he sent an "open records request" as an email directly to the Commissioners named as Defendants in two of his own lawsuits. *Id.*

4

motion to withdraw as counsel for Mr. Sanchez has been filed and representation has not otherwise been terminated. AAG Webb contacted Mr. Clevenger regarding his letter, informing him that she continued to represent Mr. Sanchez and asking Mr. Clevenger about the communications he had engaged in with Mr. Sanchez. Ex. I.

Mr. Clevenger asserted that he "heard from a third party that [Mr. Sanchez] was disgusted by what was happening inside OIG" and decided to dismissed Sanchez from *Spears II*. *Id.* Mr. Clevenger claimed that he began communicating with Mr. Sanchez on February 12, 2019, one day after Mr. Clevenger's filing of the Second Amended Complaint dropping Mr. Sanchez from the case. *Id.* Mr. Clevenger insisted, however, that it was Mr. Sanchez who had reached out to him, unprompted. *Id.* Mr. Clevenger did not notify defense counsel that Mr. Sanchez had allegedly contacted him. Instead, he continued to communicate with Mr. Sanchez, whom he knew to be represented.

When Mr. Sanchez saw Mr. Clevenger's blog, he emailed Mr. Clevenger regarding the allegations in the blog, asking Mr. Clevenger to call him. Mr. Clevenger then called and spoke with Mr. Sanchez. Mr. Clevenger, thereafter, initiated other phone calls with Mr. Sanchez, engaging in conversation about the subject matter of this litigation, specifically discussing allegations against Defendant Rhonda Fleming and OIG. Mr. Clevenger did not inquire with Mr. Sanchez or with the OAG about whether Mr. Sanchez continued to be represented. At the time of these communications, Mr. Sanchez believed he continued to be a named defendant.[9]

AAG Webb emailed Mr. Clevenger requesting copies of all correspondence between him and her client, Mr. Sanchez. Ex. J. AAG Webb stated to Mr. Clevenger that she was Mr. Sanchez's attorney at the time of the February 12, 2019 communication and continued to be his attorney as of the date of her email. *Id.* AAG Webb also informed Mr. Clevenger that his communication with Mr. Sanchez

---

[9] It is unknown when Mr. Clevenger's blog on this subject matter was first published and if his blog was amended or updated after his contact with Mr. Sanchez.

violated Texas Disciplinary Rule of Professional Conduct 4.02. *Id.* In response, Mr. Clevenger emailed Mr. Sanchez directly. In his email, Mr. Clevenger proclaimed confusion: "Briana Webb claims that she is still your attorney… that was not my understanding when you contacted me." Ex. J. AAG Molinare then emailed Mr. Clevenger explaining again that Mr. Sanchez was represented by the OAG and requesting copies of the correspondence between him and Mr. Sanchez. Ex. J.

Thereafter, Mr. Clevenger sent an email to AAGs Webb and Molinare claiming to have just received a separate email from Mr. Sanchez stating he did not want counsel. Ex. K. The "email" did not show it was sent by Mr. Sanchez, however, nor did it provide any other identifying details. *Id.* The email appears to be a copy and pasted statement placed just below Mr. Clevenger's email. *Id.* Ignoring the requests that he cease communications with Mr. Sanchez, Mr. Clevenger included Mr. Sanchez on this correspondence, which also included a suggestion that Mr. Sanchez file a bar grievance against his own counsel, AAGs Webb and Molinare. *Id.* Mr. Clevenger also copied the press—Allison Morris from express-news.net—on the email. *Id.*

At this time, the frequency of the contact between Mr. Clevenger and Mr. Sanchez is unknown, and Mr. Clevenger has refused to produce documentation as to their communications. It is clear that Mr. Clevenger has been in contact with Mr. Sanchez multiple times with knowledge that he is represented, and that Mr. Clevenger is undeterred by requests by defense counsel to refrain from speaking with their clients. *See* Ex. F, G, J, K. It is also clear that the discussions between Mr. Clevenger and Mr. Sanchez regard the subject matter relevant to this lawsuit and the *Lubbe* lawsuit.

## IV. Argument

### a. Legal Standard for Disqualification in the Fifth Circuit

A motion to disqualify counsel "is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." *See Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980). In this circuit, courts are obliged to take

6

measures against unethical conduct taking place in any proceeding before them. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). Therefore, a party may appropriately utilize a motion to disqualify to inform the Court of a breach of ethical duties. *See id.*

In evaluating a motion to disqualify, the Fifth Circuit interprets the controlling ethical norms governing professional conduct as it would any other source of law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). When the facts are undisputed, district courts enjoy no particular advantage over appellate courts in formulating ethical rules to govern motions to disqualify. *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). "On appeal, the standard of review for the grant or denial of a motion to disqualify would be for abuse of discretion. Underlying determinations would be reversed if findings of fact are clearly erroneous, but the ethical standards applied would be carefully examined." *Dresser*, 972 F.2d at 542 n.4.

The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court.'" *FDIC v .U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)). In the Fifth Circuit, the source for the standards of the profession has been the canons of ethics developed by the American Bar Association ("ABA"). *See In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992). Additionally, consideration of the Texas Disciplinary Rules of Professional Conduct is also necessary, because they govern attorneys practicing in Texas generally. *See FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995); *see also Galderma Labs., L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 394 (N.D. Tex. 2013); *Hudnall v. Univ. of Tex. at El Paso (UTEP)*, No. EP-13-CV-00365-DCG, 2013 U.S. Dist. LEXIS 202805, at *3 (W.D. Tex. Dec. 13, 2013). Beyond the various rules and codes identified above, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which

7

include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564-65 (2d Cir. 1973)).

The Fifth Circuit requires that a disqualification under former Canon 9 be analyzed under a two-prong test: (1) movant must establish that a reasonable possibility that some specifically identifiable impropriety has occurred; (2) movant must show that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case. *In re News Am. Publ'g*, 974 S.W.2d 97, 101 (Tex. App. 1998). The court must balance the prejudices to each party involved. *Id.* (citing *Shelton v. Hess*, 599 F. Supp. 905, 909 (S.D. Tex. 1984)).

### i. Mr. Clevenger violated the Local Rules of the Western District

In the Western District, the Local Rule AT-7 mandates that any member of the Texas Bar and attorney permitted to practice within the Western District "must comply with the standards of progessional conduct set out in the Texas Disciplinary Rules of Professional Conduct, Texas Government Code, Title 2, Subtitle G, App. A, art. X, sec. 9 (Vernon)." Mr. Clevenger did not meet that requirement because he violated Texas Disciplinary Rules of Professional Conduct 4.02. Specifically, Mr. Clevenger improperly encouraged the DPS Commissioners to turn over information to him as "as a blogger," and conferred with Mr. Sanchez about *Spears II* on multiple occassions, without authority or permission from their respective counsel.

Mr. Clevenger also violated Western District Local Rule AT-6, which states that "[a] lawyer should try a case in court and not in the news media. A lawyer must not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that the statement has a substantial likelihood of materially prejudicing an adjudicative proceeding." Mr. Clevenger's violation of multiple Local Rules merits disqualification in this case.

Mr. Clevenger included members of the press on emails between himself and opposing counsel regarding ongoing litigation and suggestions that defendants' attorneys are acting improperly or unethically. Ex. K. Ms. Morris is well-recognized as a journalist that investigates and reports on state agencies in Texas, including DPS.[10] Two months prior to his inclusion of Ms. Morris on correspondence concerning this litigation, Mr. Clevenger's statements to Ms. Morris regarding a different case against DPS were included in a published news story.[11] As Mr. Clevenger has clearly utilized the press, and specifically Ms. Morris, in the past to affect his cases in the media, it is reasonable to assume his intentions for including Ms. Morris in correspondence regarding this case were motivated by the same intentions.

Mr. Clevenger's blog, "LawFlog.com", constitutes another violation under Rule AT-6 and is in fact one of the reasons Mr. Sanchez initially emailed Mr. Clevenger on the topics of his blog.[12] Mr. Clevenger's blog is followed by many people and news outlets,[13] and he intentionally posts negatively about actions of defendants, such as the denial of public information requests or rumors concerning affairs, which are highly relevant to claims in his active lawsuits of *Spears* and *Lubbe*. *See, e.g.*, Ex. B, C. In fact, Mr. Clevenger posted much of his "new-found information" likely obtained from Mr. Sanchez or other clients represented by the OAG in his blog.[14] http://lawflog.com/?p=2136. *See* Ex. B. Mr. Clevenger states in his blog that he was "told" that in Mr. Sanchez's retirement letter sent only to the Public Safety Commission, that "Mr. Sanchez referenced a complaint against Inspector General

---

[10] *See* https://www.expressnews.com/author/allie-morris/#.
[11] *See* https://www.expressnews.com/news/politics/texas_legislature/article/Lawsuit-spotlights-misconduct-of-Texas-Rangers-13671011.php
[12] Of course, even if Mr. Sanchez initiated contact with Mr. Clevenger, Mr. Clevenger knew that Mr. Sanchez was still represented and should have immediately reached out to counsel for Mr. Sanchez. This will be explained further in this brief.
[13] *See, e.g.*, https://www.theeagle.com/news/local/texas-attorney-challenges-alleged-corruption-in-hearne-via-popular-blog/article_4c7c52ef-0811-5133-b55f-50e282dc29af.html;
https://www.dallasnews.com/news/watchdog/2017/02/16/watchdog-meet-bravest-texas-lawyer-ty-clevenger
[14] Mr. Clevenger highly encourages tips on his LawFlog: "I've received tips from all over the state since filing suit on behalf of Billy Spears and retired DPS Special Agent Darren Lubbe, so much so that I've had a hard time keeping track of all the information. Nonetheless, please keep sending those tips." http://lawflog.com/?p=2136&page=2

9

Rhonda Fleming, alleging (among other things) that Ms. Fleming discriminated against her ex-girlfriend…". *Id. See* Ex. B.[15] This page has links to Mr. Clevenger's Public Information Requests and the Office of General Counsel for DPS's responses and communications with the OAG. *See* Ex. B; Ex. D.

These comments and posts have already materially prejudiced this lawsuit. Mr. Sanchez has communicated with an opposing party's counsel in this suit, in which he has not yet been dismissed with prejudice, partially as a result of Mr. Clevenger's blog posts. By creating a blog that discusses ongoing litigation and by communicating directly with Mr. Sanchez, Mr. Sanchez is now reticent to receive advice and engage in forthcoming discussions with his counsel, AAG Webb.

Not only are the comments and posts on Mr. Clevenger's blog currently causing material prejudice, there is a substantial likelihood of further materially prejudicing this lawsuit. Mr. Clevenger's blog contains articles that have the direct effect of poisoining potential jurors. Moreover, Mr. Clevenger's posts expressly encourage people, which includes those involved in the lawsuit or current employees of the agencies being sued, to offer up information and "tips" on the subject matter he writes about. Allowing Mr. Clevenger to continue to receive information relevant to this case in this way is not authorized under the rules of discovery. Mr. Clevenger should not be permitted to continue to conduct investigations outside the bounds of this litigation, particularly where the likely results of those investigations will never be produced to defendants under the guise Mr. Clevenger's First Amendment right as a "blogger." *See* Ex. F (Mr. Clevenger's email stating he is entitled to communicate directly with represented defendants under his First Amendment rights as a "blogger"); *See* Ex. J, K (failing to respond to AAG Webb and AAG Molinare's request for production of his

---

[15] Mr. Clevenger asked for Mr. Sanchez's retirement letter in a public information request, which was denied. Ex. B. It's an anomaly how Mr. Clevenger knows the contents of the retirement letter that Mr. Sanchez sent only to the Commissioners, without having a copy of the letter himself, or without speaking with the DPS Commissioners or Mr. Sanchez himself.

10

communications with Mr. Sanchez). Mr. Clevenger's conduct violates Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct, which does not permit a lawyer who represents a client in a suit to "cause or encourage another to communicate about the subject of the representation with a person...the lawyer knows to be represented by another lawyer."[16]

### ii. Mr. Clevenger is in violation of the ABA's Model Rules of Professional Conduct

Mr. Clevenger has violated at least two rules of the ABA. First, he violated Rule 3.6(a) of the ABA Model Rules of Professional Conduct, which is similar to the Western District's local rule discussed above. "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." *See* Rule 3.6(a).

Second, Mr. Clevenger violated Rule 4.2 of the ABA Model Rules of Professional Conduct, which states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Here, Mr. Clevenger has admittedly contacted the Commissioners without the consent of their lawyer, and had continuous contact with Mr. Sanchez, who is also represented by the OAG. If Mr. Clevenger "misunderstood" the extent of Mr. Sanchez's representation (despite the emails asserting representation by the OAG), he had the duty to seek clarity by a court order. *See* ABA Model Rules of Professional Conduct 4.2, comment 6 ("A lawyer who is uncertain whether a communication with a represented person is permissible may seek a court order.").

---

[16] The issue here is not that Mr. Clevenger is "exercising his First Amendment rights," but rather, he is utilizing a platform that he knows to be impactful to taint the jury pool and urge employees of the Defendant agencies to come forward.

Even though Mr. Clevenger did not name Mr. Sanchez in the Second Amended Complaint, the OAG maintains legal representation of Mr. Sanchez. Texas law provides that the attorney-client relationship terminates upon completion of the purpose of the relationship, absent agreement to the contrary. *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 836 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Here, there was no agreement to end the attorney-client relationship, and the OAG has not filed a motion to withdraw as counsel for Mr. Sanchez. The duty of OAG to represent Mr. Sanchez in this lawsuit continues because the litigation is still pending and Mr. Sanchez may be included as a defendant in a subsequent amended complaint, or may become subject to discovery requests. Until the litigation has concluded, the purposes of AAG Webb's representation is to protect Mr. Sanchez's interests in the litigation. Mr. Clevenger cannot make the determination that the purpose of the OAG's representation of Mr. Sanchez has been completed.

Even if Mr. Sanchez initiated contact, Rule 4.2 still applies, and Mr. Clevenger had the duty to immediately terminate communication with Mr. Sanchez. *See* ABA Model Rules of Professional Conduct 4.2, comment 3 ("The Rule applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule."). Further, to the extent that Mr. Clevenger argues that he did not have knowledge of the Mr. Sanchez's legal representation, actual knowledge of the representation may be inferred by the circumstances. *See id.*, comment 8 ("The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. *See* Rule 1.0(f). Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious."). Here, it's obvious that Mr. Sanchez was represented and that excluding him

from the second amended complaint is not equivalent to a dismissal with prejudice. According to the Texas Bar Association, Mr. Clevenger has been licensed to practice law since at least 2002, and knows that he can add (or re-add) parties during the lawsuit pursuant to the scheduling order, or with leave of court. *See* Fed. R. Civ. P. 15.

> iii. **Mr. Clevenger violated the Texas Disciplinary Rules of Professional Conduct, Rule 4.02**

A lawyer should not orchestrate or encourage contact between himself or his client and an opposing party who is represented by counsel unless the opposing lawyer has consented to such contact. Texas Disciplinary Rule of Professional Conduct 4.02(a) states: In representing a client, a lawyer shall not communicate or cause or encourage another to communicate[17] about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. The current Texas version, Rule 4.02 (a), is relatively unchanged from its predecessor, Rule 7-104 (A)(1), which is intended "to preserve the integrity of the client-lawyer relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer." Robert P. Schuwerk and John F. Sutton, Jr., *A Guide to the Texas Disciplinary Rules of Professional Conduct*, 27A HOUSTON L. REV. 1, 351 (1990). A party is to be protected from the influences of opposing counsel's "calculated and self-serving approaches" as well as from "misguided but well-intended communications." *Id.* at 351–52. As aforementioned, after being contacted by Mr. Sanchez while he was represented, Mr. Clevenger should have immediately contacted the OAG. The anti-contact rule is more than courtesy, it is a professional requirement imposed to protect the client,

---

[17] Mr. Clevenger asserts in his blog and in an email to AAG Webb that he was getting information about Mr. Sanchez through a "third party." Ex. I. Mr. Clevenger will not disclose the identity of the "third party." To the extent that Mr. Clevenger is using a third party to communicate with represented parties, he is in violation of Rule 4.02. Mr. Clevenger is also in violation of Rule 4.02 to the extent he is speaking with employed individuals of any of the represented client agencies, including DPS or OIG. *See* Rule 4.02 (a) & (c).

13

other parties, and indeed, the very integrity of the adversary system. *In re News Am. Publ'g*, 974 S.W.2d at 105.

### b. Mr. Clevenger's actions implicate more than the appearance of impropriety.

Included in the ABA standards is the admonition that "lawyers should avoid even the appearance of impropriety." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001) (stating that ethical canons relevant to the disqualification issue before the court include the ABA Model Code of Professional Responsibility and the ABA Model Rules of Professional Conduct); *see also Dresser*, 972 F.2d at 543 (citing *Brennan's*, 590 F.2d at 171). However, the appearance-of-impropriety standard should be applied with caution. *See Woods*, 537 F.2d at 813. For disqualification to be based on a violation of that standard of conduct, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Id.* Disqualification is not always required even where there is a reasonable possibility of improper professional conduct; rather, courts must find "that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." *Id.* at 813 n.12; *see also Horaist*, 255 F.3d at 266; *Hudnall*, 2013 U.S. Dist. LEXIS 202805, at *3-4.

Here, the conduct exceeds a mere "appearance of impropriety," and there are specifically identifiable acts from which impropriety by Mr. Clevenger is readily apparent. Mr. Clevenger has continuously violated Texas Disciplinary Rule of Professional Conduct 4.02 and ABA Model Rule 4.2, by communicating with Mr. Sanchez. As evidenced by his blog and the amendment to his complaint, Mr. Clevenger is now privy to confidential information that he would not otherwise have without speaking to Mr. Sanchez. Mr. Clevenger admitted to obtaining information included in his Second Amended Complaint from Mr. Sanchez. *See* Ex. H. Mr. Clevenger refuses to disclose the information he received from Mr. Sanchez, thereby concealing the extent of the prejudice to the Defendants.

14

To the extent Mr. Clevenger's "third party" source is an employee or agent of a defendant state agency, he is further violating ethical rules. Attorneys are only permitted to speak with employees of an entity of government represented by a lawyer if that employee's conduct is not at issue in the representation and that employee has information regarding the subject matter of the suit. *See* Tex. Disciplinary R. Prof. Conduct 4.02.[18]

Here, Mr. Sanchez's conduct, including his retirement and his actions while Deputy Inspector General, are at issue in this case as many of the claims asserted by Plaintiff depend on Mr. Sanchez's actions during his role as Deputy Inspector General. Communications between AAG Webb and Mr. Sanchez, and some written communications by Mr. Clevenger evince that Clevenger's communication with mr. Sanchez concerns the "subject of the representation" of the instant lawsuit. *See, e.g.,* Ex. D; E. Mr. Clevenger's emails to Mr. Sanchez suggesting that he was not represented by AAG Webb (Ex. J) and suggesting that Mr. Sanchez file a bar complaint against his attorneys (Ex. K), demonstrate that Mr. Clevenger was asserting his influence over Mr. Sanchez. Mr. Clevenger took advantage of his influence over Mr. Sanchez to gain confidential information and circumvent the discovery process. *See Jackson v. City of San Antonio*, No. SA-03-CA-49-RF, 2003 U.S. Dist. LEXIS 23350, at *6 (W.D. Tex. Dec. 22, 2003) (finding that had the ex parte communication been made in a vacuum, to a lone litigant, subject to influence, then the movant would have been able to satisfy the second prong of the *Shelton* test) (citing *Shelton*, 599 F. Supp. at 909) (holding that to disqualify when there are improper ex parte communications with a party, the movant must first show "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur," and must then show that "the likelihood

---

[18] Tex. Disciplinary R. Prof. Conduct 4.02, comment 4 states: "In the case of an organization or entity of government, this Rule prohibits communications by a lawyer for one party concerning the subject of the representation with persons having a managerial responsibility on behalf of the organization that relates to the subject of the representation and with those persons presently employed by such organization or entity whose act or omission may make the organization or entity vicariously liable for the matter at issue, without the consent of the lawyer for the organization or entity of government involved. This Rule is based on the presumption that such persons are so closely identified with the interests of the organization or entity of government that its lawyers will represent them as well. If, however, such an agent or employee is represented in the matter by his or her own counsel that presumption is inapplicable."

15

of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in the particular case"). Mr. Clevenger's conduct of engaging in communications with a party he knows to be represented and continuing those communications after requests by counsel to cease and desist, indicate Mr. Clevenger's unethical conduct will likely continue.

    **c. Keeping Mr. Clevenger as counsel will raise public suspicion and criticism that outweighs the social interests of Mr. Clevenger's continued participation in this case.**

In *Shelton*, the offending and later disqualified attorney met in secret with an individual representative of a defendant entity, after which plaintiff dismissed all punitive claims against that individual. The individual, with help from the offending attorney, filed for notice of substitution of counsel. *Shelton,* 599 F. Supp. at 907–08, 910. Ultimately, the offending attorney persuaded the individual to release his original counsel and accept the offending attorney as counsel, thereby ensuring counsel's place on both sides of the dispute. *Id.* at 910. The Court found this conduct to violate the ethical rules in question and to merit disqualification, despite the consequent interruption in representation and litigation. *See id.*; *Jackson v. City of San Antonio*, No. SA-03-CA-49-RF, 2003 U.S. Dist. LEXIS 23350, at *10-11 (W.D. Tex. Dec. 22, 2003).

As in *Shelton*, Mr. Clevenger has been speaking privately with a defendant and employee of OIG, whose role in the facts giving rise to this suit will affect the outcome of the case. In an email to AAG Webb, Mr. Clevenger stated that he was not asserting an attorney-client relationship with Mr. Sanchez, but "maybe later…for now, he is just a witness and a source." Ex. I. It is not unreasonable to expect that after using Mr. Sanchez as a "witness and a source," Mr. Clevenger will attempt to represent Mr. Sanchez in another lawsuit against the Defendant agencies, which would implicate another conflict. Mr. Clevenger has taken no action to stop speaking with Mr. Sanchez, even after being repeatedly asked to by Mr. Sanchez's attorneys, and will likely continue to speak with Mr. Sanchez and other "third-parties" until he is properly sanctioned by this Court, which includes being

16

removed from this case completely. Mr. Clevenger's history of sanctions and disregard for professional ethics show a pattern of culpable behavior with no intentions of stopping.[19] His conduct has not only prejudiced Mr. Sanchez, but also all the other Defendants in the *Spears II* lawsuit, including those named in the *Lubbe* lawsuit which is incorporated within *Spears II*. He has been given more "inside information" to turn into allegations and claims against more high-level officials which he then turns around and posts on his blog.

This lawsuit has not begun the discovery process. By reaching out to mulitple represented parties to obtain information regarding other named Defendants [Ex. E], Mr. Clevenger is circumventing the discovery process. He has obtained confidential information from represented parties that aided him pleading, conducting discovery, determining who to sue, and anticipating defenses that may or may not be raised. Because Mr. Clevenger has not been forthcoming with the entirety of his communications, Defendants are susbtantially prejudiced. By Mr. Clevenger's conduct, he has made himself a fact witness as to information he obtained as a "blogger." The public suspicion of impropriety far exeeds the social interests of Mr. Clevenger's continued pariticipation in this case. This satisfied the second prong of the *Shelton* test.

## V. Conclusion

Defendants have been substantially prejudiced by Mr. Clevenger's blogging, improper requests for information from represented parties while holding himself out to be a blogger, previous and

---

[19] Mr. Clevenger recently faced disbarment in Washington, D.C., but instead received as 120-day suspension from the D.C. Federal Courts. He has been sanctioned $25,000 by one judge and another $123,000 by another. https://www.dallasnews.com/news/watchdog/2017/02/16/watchdog-meet-bravest-texas-lawyer-ty-clevenger. He also received a public reprimand in Texas for committing professional misconduct by violating Rule 3.02 [In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter] and was ordered to pay $1,100. In another case, Mr. Clevenger received numerous warnings by Judge Huvelle that his frivolous litigation would not be tolerated. Judge Huvelle wrote that despite the numerous warnings, Mr. Clevenger "defied the Court be pursing baseless claims and arguments…[h]e cannot immunize himself by relying on the duty to zealously represent his client. An attorney also has a duty to the profession and the Court and it is his responsibility to fulfill both." https://www.courthousenews.com/attorney-sanctioned-for-excessive-litigation/

continued ex parte communications with a represented party in a management position within the OIG, and Mr. Clevenger's refusal to cease communications and disclose these communications with counsel for Defendants.

The OAG does not file this motion lightly. To protect the Defendants' interests in this case, Defense counsel seeks the Court's intervention. There is no indication that Mr. Clevenger will terminate communications with Mr. Sanchez, or that he will not use information he has already received from Mr. Sanchez or other "tips" from "third parties" to further his cause in this lawsuit. Disqualification is the only adequate remedy to prevent additional prejudice. As such, there is no remedy at law besides disqualification and applicable monetary sanctions as the Court deems necessary. If the Court does not disqualify Mr. Clevenger, the OAG respectfully requests an order excluding the use of all information obtained by Plaintiff through Mr. Clevenger's unethical conduct.

## VI. Prayer

The Defendants respectfully request that the Court: (1) schedule an evidentiary hearing regarding the matters raised herein; (2) impose appropriate monetary or other sanction on Plaintiff and his counsel for violating the letter and spirit of the local rules of the Western District, the Texas Disciplinary Rules of Professional Conduct, and the ABA Model Rules of Professional Conduct; and (3) disqualify Plaintiff's counsel and his firm from representing Plaintiff in this case, any case incorporated therein, and any future cases arising out of the same facts, circumstances, or conduct.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Briana M. Webb
**BRIANA M. WEBB**
Assistant Attorney General
Texas State Bar No. 24077883
briana.webb@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin TX 78711
T: (512) 463-2080/F: (512) 370-9891

**ATTORNEYS FOR DEFENDANTS McCRAW, BAKER, WEBSTER, BRADBERRY, LIVINGSTON, GONZALEZ, SANCHEZ, FLEMING, WILKIE, NEGRI, JACKSON, STOKKE, SPARKS, & DRABBLE**

/s/ Kelsey L. Warren
**KELSEY L. WARREN**
Assistant Attorney General
Texas State Bar No. 24095736
kelsey.warren@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin TX 78711
T: (512) 463-2080/F: (512) 370-9373

**ATTORNEYS FOR DEFENDANTS MACH, FLORES, LEON, PULLIAM, JOHNSON, & WATSON**

**NOTICE OF ELECTRONIC FILING**

I, BRIANA M. WEBB, Assistant Attorney General of Texas, certify that I have electronically submitted for filing a true copy of the foregoing in accordance with the Court's Case Management/Electronic Case Files **(CM/ECF)** system of the Western District of Texas on August 8, 2019.

/s/ Briana M. Webb
**BRIANA M. WEBB**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, BRIANA M. WEBB, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served via the Court's Case Management/Electronic Case Files (**CM/ECF**) system on August 8, 2019 to all counsel of record.

/s/ Briana M. Webb
**BRIANA M. WEBB**
Assistant Attorney General