IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BILLY L. SPEARS, | § |
| | § |
| V. | § |
| | § CAUSE NO. A-17-CA-1105-RP |
| STEVEN McCRAW et al. | § |

## ORDER

Before the Court are Defendants' Joint Motion for Sanctions, Motion for Disqualification, and Motion for Evidentiary Hearing (Dkt. No. 43); Plaintiff's Motion for Sanctions Against Defendants' Counsel and Plaintiff's Motion for Disciplinary Referral (Dkt. No. 45); and all associated responses and replies. The district court referred the above motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. PROCEDURAL BACKGROUND

Plaintiff Billy L. Spears is a trooper with the Texas Highway Patrol, a division of the Texas Department of Public Safety. Dkt. No. 25 at 2. He has filed two cases in federal court related to his employment with DPS. In the first case, filed on April 29, 2015, Spears sued the DPS and ten other defendants including, relevant to the motions now before the Court, DPS Office of Inspector General Captain Luis Sanchez, alleging various constitutional violations and claims under the Texas Whistleblower Act. *See Spears v. Tex. Dep't of Public Safety, et al.*, No. 1:15-CV-511-RP (W.D. Tex.) (*Spears I*). On the Defendants' motion, Judge Pitman granted summary judgment as to Spears's constitutional claims. *Spears I*, Dkt. No. 31. Spears dismissed the remaining Texas Whistleblower Act claim by agreement.

In this case, filed November 21, 2017, Dkt. No. 1, Spears again brought civil rights claims under 42 U.S.C. § 1983. He originally sued 18 defendants, including all members of the Texas Public Safety Commission, various DPS and Texas Highway Patrol officials and officers, and again, relevant to the motions before the Court, DPS OIG Captain Luis Sanchez. Dkt. No. 12 at 2-3. In his First Amended Complaint, Spears alleged that the Defendants participated in a conspiracy to violate his civil rights, retaliated against him for exercising his First Amendment rights, and failed to supervise those who retaliated. *Id.* at 8-10. He sought injunctive relief against Defendants in their official capacity and damages against Defendants in their individual capacity. *Id.* at 10. On the Defendants' motion, Judge Pitman again dismissed all of Spears' claims against all defendants, and gave Spears the opportunity to amend to cure the complaint's deficiencies. Dkt. No. 22. In his Second Amended Complaint, Dkt. No. 25, Spears dropped his claims against Sanchez, kept the remaining Defendants and added additional defendants and claims. Defendants moved to dismiss that complaint, asserting they were entitled to qualified immunity on all of the claims. The undersigned issued a Report and Recommendation recommending that the district court grant the motion. Dkt. No. 42. Judge Pitman adopted the Report and Recommendation in part, found that all Defendants were entitled to qualified immunity, and dismissed all Spears' claims. Dkt. No. 51.

The present motion was filed the very same day that the undersigned issued the Report and Recommendation recommending the dismissal of the case. Defendants claim that Spears' attorney, Ty Clevenger, was improperly in contact with Luis Sanchez and the DPS Commissioners when they were represented by counsel. They also claim that Clevenger improperly shared information about the case with the press, and improperly posted about it on his blog. Based on this, Defendants ask the Court to disqualify Clevenger from this lawsuit and impose monetary sanctions against him.

Not to be outdone, two weeks later, Spears filed his own motion for sanctions against Defendants' counsel. Clevenger contended his communications with Sanchez and the DPS Commissioners were proper, and that Sanchez's OAG counsel, Briana Webb "deceived" Sanchez as to whether she was his attorney. He also asserted that Webb's supervising attorneys, including Attorney General Ken Paxton, violated the disciplinary rules by knowingly permitting Webb's misconduct. His motion requests discovery, fees and costs related to the "bad faith" sanctions motion Defendants filed, an evidentiary hearing, and a referral of Defendants' attorneys' misconduct to the Office of Chief Disciplinary Counsel of the State Bar of Texas.

Eight days after Spears filed his responsive motion for sanctions, Judge Pitman adopted the undersigned's recommendation, and dismissed all remaining claims against all Defendants. These lingering cross motions, in which counsel are slinging allegations at each other, are all that remain in the case.

## II. ANALYSIS[1]

### A. Motion to Disqualify Spears' Counsel

Defendants move to disqualify Clevenger, asserting he violated various ethical and disciplinary rules. Motions to disqualify are substantive in nature and are thus decided under federal law. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). Disqualification is a severe

---

[1]Two preliminary remarks are in order. First, Spears notes—correctly—that Defendants failed to confer prior to filing the motion to disqualify and sanction him. Under the Local Rules, this alone supports the denial of the motion. *See* W.D. LOCAL R. CV-7(i). Second, the Court declines to set a hearing on these motions. "The right to a hearing . . . is limited to cases where a hearing would assist the court in its decision." *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1418 (5th Cir. 1994). The parties have submitted more than 35 exhibits including a declaration from Luis Sanchez, an affidavit from Ty Clevenger, various emails between and among counsel in the case, emails between Clevenger and Sanchez, copies of Clevenger's blog, and Clevenger's communications with state agency officials. These exhibits are more than adequate for the Court to decide the motions, and the Court therefore **DENIES** the parties' respective motions for an evidentiary hearing.

sanction. "Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *Id.* at 1313. Courts must consider the particular facts of each case in the context of the relevant ethical guidelines and with deference to a litigant's rights. *In re ProEducation Int'l, Inc.,* 587 F.3d 296, 300 (5th Cir. 2009). As discussed, Judge Pitman has already dismissed all of the claims in the case. Arguably, this makes the motion moot. However, Clevenger has filed a motion to amend the judgment, and he could appeal the Court's rulings once a final judgment is entered. Further, Defendants request that Clevenger not only be disqualified from this case, but also from "any future cases arising out of the same facts, circumstances, or conduct," and they seek monetary sanctions. Dkt. No. 43 at 18. The Court will therefore reach the merits of the motion.

The party seeking to disqualify an attorney bears the burden of proving that disqualification is warranted, and that burden is heavy. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981). Fifth Circuit precedent requires the court to consider several relevant ethical standards in determining whether there has been an ethical violation, such as the canons of ethics developed by the American Bar Association, the Texas Disciplinary Rules of Professional Conduct, where the attorneys at issue are practicing in Texas, and local court rules. *Galderma Labs., L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 394 (N.D. Tex. 2013). Additionally, Defendants must show they suffered actual prejudice from any alleged violation. *See In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) ("[A] court should not disqualify a lawyer for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification."); *Orchestratehr, Inc. v. Trombetta*, 2016 WL 4563348, at *14 (N.D. Tex. 2016).

4

Defendants argue that Clevenger should be sanctioned and disqualified for the following actions: (1) communicating with an opposing party (Luis Sanchez) when that party was represented by counsel; (2) writing to the DPS Commissioners requesting information relevant to this case and another case in which Clevenger is representing a DPS employee (*Lubbe v. Mitanovich, et al.*, Case. No. 18-CV-1011 (W.D. Tex.)); (3) improperly copying members of the media on emails between and among counsel; and (4) improperly trying the case in the media through comments on his blog, "LawFlog.com."

### 1. *Communications with Sanchez*

As mentioned in the background facts, Spears originally named Luis Sanchez as a defendant in this case. On February 11, 2019, Spears filed his Second Amended Complaint dropping all claims against Sanchez. Dkt. No. 25. More than two months later, Assistant Attorney General Brianna Webb contacted Clevenger to complain about Clevenger communicating with Sanchez, stating that she still represented Sanchez since he had not been formally dismissed from the case.[2] Clevenger responded that he began communicating with Sanchez only after he dropped Sanchez from the case, and in fact it was Sanchez who reached out to him unprompted, after seeing his blog. *Id.* In the same email exchange, Webb asked Clevenger whether he was asserting an attorney-client relationship with Sanchez. *Id.* He responded "not now, maybe later . . . for now he is just a witness and a source." *Id.*

On May 11, 2019, Clevenger wrote a letter to the OAG Open Records Division and DPS Office of General Counsel asserting that Sanchez sent his resignation letter through a private

---

[2]Her email states, "To my knowledge, I still represent [Sanchez] until he is formally dismissed. Can you please let me know to what extent you have been communicating with Sanchez and when those communications began? It seems your communication with Sanchez might have began after you filed your first complaint and before you filed your amended complaint dropping him as a defendant, during which time he was represented by my office." Dkt. No. 43-9.

account, requesting preservation of similar evidence, and representing that he had been in communication with Sanchez. Dkt. No. 43-8. On May 22, 2019, Webb emailed Clevenger asserting that "at the time of any contact between you and Mr. Sanchez, I was his attorney (despite the fact you dropped him as a defendant in the second complaint), and continue to be his attorney." Dkt. No. 43-10. She also requested copies of all correspondence with Sanchez, and informed Clevenger that his communications with Sanchez were in violation of Texas Disciplinary Rule of Professional Conduct 4.02. *Id.* In response, Clevenger emailed Sanchez, copying Webb and other OAG attorneys in this case, asserting that, "Brianna Webb claims that she is still your attorney . . . that was not my understanding when you contacted me, but please let me know whether her representations were accurate." Dkt. No. 43-10. That same day, Clevenger emailed the same three OAG attorneys a response, including an email response from Sanchez, and asserting that Webb could not simply inform Sanchez that she was his attorney. Sanchez's statement was "I really don't want anyone to represent me. I have no idea they are still representing me. I really don't need anyone representing me since I am no longer a party to anyone's lawsuit. I didn't know I had a choice." Dkt. No. 43-11; Dkt. No. 44-1. OAG Division Chief Shanna Molinare responded, again asserting that Clevenger should refrain from communicating with Sanchez, as he was a party to *Spears I* and *Spears II,* and "dismissing someone from a suit through an amended complaint absolutely does not extinguish the attorney-client relationship." Dkt. No. 43-10.

In his Declaration, Sanchez asserts that "as far as I am concerned, my attorney-client relationship with Ms. Webb and the Office of the Attorney General terminated on October 31, 2018, when I officially retired from the Department of Public Safety." Dkt. No. 52-1. Sanchez further states that on May 22, 2019, Webb called him and informed him that she was still his attorney because he

might be added back into the lawsuit. On that same day, Sanchez emailed with Clevenger asserting he did not need representation because he was no longer a party to the suit. Dkt. No. 44-1. In this email between Clevenger and Sanchez, Sanchez stated:

> Ty, she contacted me today and informed me that she still represents me even though you all dropped me from the lawsuit. She says that it's because you can refile it. I have no idea on the legal matters, and she advised I can have no further communication with anyone until this is resolved. This is the first time I have ever spoken with her and don't understand because I am no longer an employee with the state.

*Id.* Sanchez asserts that he has not been in contact with the OAG since May 22, 2019, when Webb informed him that she was still his attorney. Dkt. No. 44-1.

Defendants assert that Clevenger's communications with Sanchez violated the American Bar Association Model Rule 4.2, Texas Disciplinary Rule of Professional Conduct 4.02, and "implicates the appearance of impropriety" because Clevenger knew Sanchez was represented by counsel when he was in contact with him. Dkt. No. 43 at 14. Rule 4.02(a) provides:

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

TEX. DISC. RULES PROF'L CONDUCT R. 4.02(a).[3] The evidence does not support the OAG's position.

---

[3] ABA Model Rule 4.02 is substantially the same as the Texas rule. However, Local Rule for the Western District of Texas AT-7 permits consultation of the ABA Model Rules of Professional Conduct only "[f]or matters not covered by the Texas [Disciplinary Rules of Professional Conduct]." W.D. Local R. AT-7(a). Here, Texas Disciplinary Rule of Professional Conduct 4.02 covers the same matters as ABA Model Rule of Professional Responsibility 4.2. *Del Mor Logistics, LLC v. GB Carriers, LLC,* EP-14-CV-053-DB, 2014 WL 12580441, at *2 (W.D. Tex. July 7, 2014). Thus, pursuant to Local Rule AT-7, the issue before the Court must be analyzed under Texas Rule 4.02 and not under ABA Model Rule 4.2. *See Camoco, LLC v. Leyva,* 2019 WL 6131452, at *5 (W.D. Tex. Nov. 19, 2019).

First, Sanchez is the party who reached out to Clevenger, and only after he was dropped as a defendant in this case. Dkt. No. 52-1. Clevenger's emails confirm this. Dkt. No. 43-10. Both Sanchez and Clevenger have represented that no contact between them arose until after the filing of Spears' Second Amended Complaint. Dkt. No. 43-9. They have also each represented that they believed Sanchez was not represented by counsel at the time Sanchez first reached out to Clevenger. Dkt. No. 52-1; Dkt. No. 43-9. The Defendants contend this does not end the matter, as Webb claims she was still representing Sanchez, whether he desired the representation or knew about it. The facts, however, do not support the existence of an attorney-client relationship after Sanchez was dropped from the suit. An attorney-client relationship depends on a contract, express or implied, between the parties. *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). When an attorney-client relationship is established, "the relation generally terminates once the purpose of the employment is completed, absent a contrary agreement." *Id.* Courts look to the actions of the parties as a manifestation of their intent concerning the purpose of their attorney-client relationship. *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, 2011 WL 13201855, at *7 (N.D. Tex. Sept. 12, 2011).

Defendants have offered no evidence to support their assertion that the OAG and Sanchez had an ongoing attorney-client relationship at the time Sanchez contacted Clevenger in February 2019, or at any point thereafter. The only document reflecting the existence of a relationship is an email from Sanchez dated January 29, 2018, and with the subject line "New Lawsuit Trooper Billy Spears." That email states, "I agree to waive the service of the subpoena and request legal representation from the Office of the Attorney General" with regard to "this matter," referring to the *Spears II* suit. Dkt. No. 43-1. While this demonstrates the commencement of Webb's and the OAG's representation of Sanchez, it says nothing about the date of its termination. As noted, an

8

attorney-client relationship "generally terminates once the purpose of the employment is completed." *Simpson*, 903 F.2d at 376. When Sanchez was dropped from the lawsuit, there was nothing further for an attorney to do representing him, as the representation related to "this matter," that is, this lawsuit. Webb's assertion on May 1, 2019, that "[t]o my knowledge, I still represent [Sanchez] until he is formally dismissed," Dkt. No. 45-10, is based on a false premise. The Federal Rules of Civil Procedure do not require "formal" dismissal of a party if an amended complaint drops that party as a defendant. And if there were any possible doubt on this point, Sanchez's actions resolve it. Sanchez's declaration and emails make it clear that he did not believe he was represented after being dropped, and did not request any continued representation. Dkt. No. 52-1; Dkt. No. 44-1. Thus, Clevenger's communications with Sanchez were not with someone he "knew to be represented" about "the subject of the representation," because Sanchez was no longer a party to the case.

And Webb's claim that she continued to represent Sanchez into May 2019 is belied by her own lack of confidence in that claim. On May 1, 2019, rather than contacting Sanchez, she asked *Clevenger* if Sanchez and Clevenger had an attorney-client relationship. If Sanchez were her client, Webb would have directed that question to Sanchez, rather than asking her opposing counsel. Indeed, Sanchez asserts the one and only contact he ever had with Webb was when she contacted him on May 22, 2019, to tell him that she was his lawyer—three months after he had been dropped from the case. Dkt. No. 52-3. This bolsters the conclusion that the two did not have an ongoing attorney-client relationship after Sanchez was dismissed from the lawsuit (and did not have a very robust relationship before that time). Indeed, if anything, the evidence suggests that Webb's primary motivation in claiming a continuing relationship with Sanchez was to prevent him from speaking

9

with her opposing counsel, and Webb had no ongoing work or counsel she could provide Sanchez at that time, as he was no longer a party to the case.

Accordingly, Clevenger's communications with Sanchez did not violate Texas Disciplinary Rule of Professional Conduct 4.02, American Bar Association Model Rule 4.2, nor do they "implicate the appearance of impropriety."[4]

### 2. *Correspondence with the DPS Commissioners*

Defendants also complain that under the guise of being a "blogger," Clevenger improperly communicated directly with the DPS Commissioners—Defendants in this case—when the were represented by the OAG. The email, dated May 1, 2019, states:

> Commissioners,
>
> I'm a blogger (LawFlog.com), and I would like to know why James Lopez is being considered for appointment as inspector general even though he does not meet the posted requirements (e.g., four-year degree, senior management experience, etc.). I would also like to know why the PSC is moving so quickly, particularly since the vacancy was only posted two weeks ago.
>
> I would also like to know whether Rhonda Fleming left the department voluntarily, or if she was encouraged to leave as a result of the complaint filed by former Deputy Inspector General Louis Sanchez. I will not be able to attend the meeting tomorrow, but I believe Allie Morris from the San Antonio Express-News will be there. I've cc'd her on this email.
>
> Ty Clevenger

Dkt. No. 43-5. Defendants contend that this email was improper because Clevenger was contacting opposing parties he knew to be represented, and failed to identify himself as the attorney currently

---

[4]Moreover, disqualification is not warranted even in the event of a disciplinary violation it did not result in actual prejudice to the party seeking disqualification. *Orchestratehr, Inc. v. Trombetta*, 2016 WL 4563348, at *14 (N.D. Tex. Sept. 1, 2016). Given that Judge Pitman has already granted summary judgment on all of the claims in the case, there was no prejudice caused by Clevenger's communications with Sanchez.

suing them, and also complain that he was asking them about another of the Defendants in the case (Fleming). After the email, Webb and Assistant Attorney General Kelsey Warren contacted Clevenger to share their concerns about this correspondence and the applicability of Texas Disciplinary Rule of Professional Conduct 4.02. Clevenger ultimately admitted he should not have requested information about Fleming, Dkt. No. 45-8, but otherwise responded that he had "the right as a citizen to file open records requests through DPS OGC and to ask questions about matters of public concern." Dkt. No. 43-6.

Defendants argue that Clevenger violated Texas Disciplinary Rule of Professional Conduct 4.02 when he improperly encouraged the DPS Commissioners to turn over information to him as a "blogger." But no evidence was turned over to Clevenger through this request, Dkt. No. 43-7 (correspondence among Clevenger and OAG counsel stating the requests were subject to the litigation exception), and Defendants have failed to demonstrate they suffered the prejudice sufficient to support disqualification.

Defendants also complain of a letter sent to the OAG Open Records Division and DPS Office of General Counsel, stating:

> Ms. McWethy and Mr. Sears:
>
> Former Deputy Inspector General Louis Sanchez informed me that the Public Safety Commissioners routinely communicate about DPS business via their private email accounts, and that he sent copies of his retirement letter to those private accounts. I would like to know whether OAG took this into consideration when deciding whether the letter was subject to release.
>
> Either way, please inform the commissioners that they need to preserve all DPS related-communications that were sent to or from their private email accounts. In addition to being public records, those communications may be needed as evidence in *Billy Spears v. Steven McCraw, et al.*, Case No. 1:17-cv-1105 (W.D. Tex.) and *Darren Lubbe v. Mark Milanovich, et al.*, Case No. 1:18-cv-1011 (W.D. Tex.).

11

Thank you for your consideration.

Dkt. No. 43-8. The letter copied three OAG attorneys—Shanna Molinare, Heather Rhea, and Kelsey Warren. Defendants complain that Clevenger's letter to the OAG Open Records Division and DPS Office of General Counsel is not the proper method to request discovery. They are incorrect. Nothing in the Federal Rules of Civil Procedure prohibits a party from seeking information through an open records request.[5] More to the point, Clevenger did not violate any disciplinary rules through his open records request. And he copied OAG counsel on his letter, who in turn asserted the litigation exception, so no prejudice resulted from the open records request.

### 3. *Inclusion of News Media on Correspondence*

Defendants also complain that Clevenger violated Local Rule AT-6 and its substantially similar analog, Rule 3.6(a) of the ABA Model Rule of Professional Conduct when he included members of the press on emails between counsel. Dkt. No. 43-5 (email to DPS Commissioners); Dkt. No. 43-11 (email to AAG's Molinare and Webb). Texas Local Rule AT-6 states:

> [a] lawyer should try a case in court and not in the news media. A lawyer must not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that the statement has a substantial likelihood of materially prejudicing an adjudicative proceeding.

---

[5]This does not mean the request was prudent. Under the statute, a governmental body need not release public information "if it is information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the person's office or employment, is or may be a party." TEX. GOV'T CODE § 552.103(a). "The purpose of the litigation exception is to prevent parties in litigation from obtaining documents outside of discovery." *Thomas v. Cornyn*, 71 S.W.3d 473, 487 (Tex. App.–Austin 2002, no pet.).

W.D. LOCAL R. AT-6. Once again, based upon the current disposition of this case, where all claims against Defendants have been dismissed, even if Clevenger violated this rule, Defendants cannot show the prejudice required to support disqualification.

### 4. *Improperly Commenting on Case Through Blog*

Finally, Defendants complain that Clevenger's postings on his blog "LawFlog.com" violated Local Rule AT-6 because Clevenger included information related to Defendants that was relevant to his client's claims in active lawsuits. Defendants assert the posts materially affected this suit by dissuading Sanchez from communicating with Webb, and could have poisoned potential jurors. Further, Defendants complain that as a blogger, Clevenger collected "tips" relevant to this case, which, they contend, Clevenger was unlikely to turn over in discovery. The same analysis regarding prejudice outlined above applies here. Since the District Court has granted Defendants' dispositive motion granting qualified immunity and disposing of all claims, Defendants can show no prejudice from anything Clevenger posted to his blog.

## C. Defendants' Motion for Sanctions

Defendants move for monetary sanctions against Plaintiff and his counsel based upon the same grounds on which they moved for disqualification of Clevenger. Federal courts have inherent power to sanction bad-faith conduct. *Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, 137 S. Ct. 1178, 1186 (2017); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (internal quotation and citations omitted). Based on the analysis above, the Court finds that Defendants have

failed to carry their burden to show that Clevenger acted in "bad faith." Accordingly, Defendants' Motion for Sanctions is **DENIED.**

For all of these reasons, Defendants' Motion to Disqualify Counsel (Dkt. No. 43) is **DENIED**.

### D.     Plaintiff's Motion for Sanctions

Spears requests that the Court sanction Defendants pursuant to 28 U.S.C. § 1927 for multiplying the proceedings in this case "unreasonably and vexatiously" and pursuant to the Court's inherent powers. 28 U.S.C. Section 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The statute requires that "there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Clark v. Mortensen*, 93 Fed. Appx. 643, 650 (5th Cir. 2004). Sanctions under § 1927 require "clear and convincing evidence that every facet of the litigation was patently meritless" and "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525–26 (5th Cir. 2002). These sanctions are designed to be punitive in nature and generally focus on the conduct of the litigation rather than the merits. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010). A similar standard applies to the Court's inherent power to sanction. *Batson v. Neal Spelce Assoc.*, 805 F.2d 546, 550 (5th Cir. 1986) ("[F]ederal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has acted in bad faith, vexatiously, wantonly

or for oppressive reasons."). None of the actions Spears complains about merits the award of under either Section 1927 or the Court's inherent powers.

Spears asserts that Defendants' factual allegations supporting their motions for sanctions and disqualification constitute fraud on the Court because at the time Defendants filed their motion for disqualification, they were aware that Webb and Molinare did not have an attorney-client relationship with Sanchez. Spears points to the fact that they have failed to produce evidence of an ongoing attorney-client relationship with Sanchez. In addition to the evidence already discussed, Spears also relies on an email Clevenger sent to Defendants' attorneys requesting proof of a current attorney-client relationship with Sanchez. Dkt. No. 45-1. Because Defendants' counsel never presented such evidence, Spears argues this too is proof there was no attorney-client relationship.

As already discussed, the Court finds the claims of the OAG attorneys, particularly Webb, that they were Sanchez's counsel notwithstanding his desire that they not be, to have been ungrounded. This also means that Webb's accusations that Clevenger violated ethical rules by communicating with Sanchez were unfounded. And, the Court is not pleased that the OAG chose to not only raise the issue with Clevenger, but to go a step further and move to disqualify Clevenger. This, however, does not mean that sanctioning the conduct is an appropriate exercise of the Court's discretion. It appears that Defendants' counsel sincerely—albeit groundlessly—believed Sanchez was represented by the OAG at the time he communicated with Clevenger, and the OAG had in fact represented Sanchez in both *Spears* cases. Spears' complaint that these attorneys deceived Sanchez when they informed him he had no choice in their representation of him is also not sufficient to support sanctions. Though Defendants' counsels' actions lacked an appropriate factual grounding, they do not appear to have been made in bad faith.

For all of these reasons, Plaintiff's Motion for Sanctions Against Defendants' Counsel (Dkt. No. 45) is **DENIED**.[6]

E.  **Plaintiff's Motion for Referral to Office of Chief Disciplinary Counsel of the State Bar of Texas**

Having found no need for the imposition of sanctions, the Court declines to refer Spears' complaints about OAG counsel to the State Bar. There is no requirement of a Court referral to file a grievance. An attorney may file a complaint with the State Bar without a court's imprimatur. Spears' motion for a disciplinary referral is **DENIED**.

### III.  CONCLUSION

A final note. The motions just resolved are the very sort of filings that give lawyers a bad public image. None of the matters complained of in these filings merited the amount of time and attention the lawyers gave them, and certainly did not merit the amount of time the Court was forced to spend resolving them. It is apparent that the animosity between the lawyers drove their decision making. They would all do well to think twice before bringing such matters up in the future.

SIGNED this 5th day of February, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[6] Spears also requests the Court order Defendants to produce discovery regarding communications between the Defendants' attorneys regarding Clevenger and Sanchez, asserting the crime fraud exception to the work product doctrine. Having denied the motion for sanctions, the Court **DENIES** Spears' request for discovery as **MOOT**.

16